(b)     The Liquidating Transactions shall have been consummated;

(c)     All funds due and owing to or by the Debtors under the Intercompany Claims Settlement shall have been paid in accordance with its terms;

(d)     The Distribution Trustee shall have been appointed and shall have accepted such appointment;

(e)     The Distribution Trust Agreement shall have been executed and the Trust Accounts shall have been established; and

(f)     All other actions, documents, consents and agreements necessary to implement the Plan shall have been effected, obtained and/or executed.

6 3     Waiver of Conditions to the Confirmation or Effective Date. The conditions to confirmation set forth in Section 6.1 and the conditions to the Effective Date set forth in Section 6 2 may be waived by the Debtors at any time and without an order of the Bankruptcy Court, with the consent of the Creditors' Committee.

## ARTICLE VII

## MEANS FOR IMPLEMENTATION OF THE PLAN

7.1     Liquidating Transactions  On the Effective Date, the Distribution Trust Assets will be transferred to and vest in the Distribution Trust, free and clear of Claims, Liens and Interests, except as may be otherwise provided in the Intercompany Claims Settlement. On or after the Effective Date, the Debtors will enter into such transactions and will take such actions as may be necessary or appropriate to merge, dissolve or otherwise terminate the corporate existence of the Debtors. Notwithstanding the foregoing and regardless of whether the actions in the preceding sentence have yet been taken with respect to a particular Debtor, upon the transfer of the Distribution Trust Assets to the Distribution Trust, the Debtors will be deemed dissolved and their business operations withdrawn for all purposes without any necessity of filing any document, taking any further action or making any payment to any governmental authority in connection therewith.

7 2     Corporate Action. The following (which will occur and be deemed effective as of the date specified in the documents effectuating the same or, if no date is so specified, the Effective Date) will be deemed authorized and approved in all respects and for all purposes without any requirement of further action by KACC, as the sole stockholder of each Debtor, by the directors of either Debtor or by the Distribution Trustee or any other person or entity:  (a) the Liquidating Transactions; (b) the establishment of the Distribution Trust; (c) the appointment of the Distribution Trustee to act on behalf of the Distribution Trust; (d) the transfer of the Distribution Trust Assets to the Distribution Trust; (e) the creation of the Trust Accounts; (f) the distribution of Cash pursuant to the Plan; (g) the adoption, execution, delivery and implementation of all contracts, instruments, releases and other agreements or documents related to any of the foregoing; (h) the adoption, execution and implementation of the Distribution Trust Agreement; and (i) the other matters provided for under the Plan involving the corporate structure of either Debtor or corporate action to be taken by, or required of, either Debtor or the Distribution Trustee

7 3     No Revesting of Assets  On the Effective Date, the property of the Debtors' Estates will vest in the Distribution Trust to be administered by the Distribution Trustee in accordance with the Plan and the Distribution Trust Agreement

7 4     Recourse Solely to Trust Accounts.  The Liquidating Transactions will not in any way merge the assets of the Debtors' Estates, including the Trust Accounts. All Claims against the Debtors are deemed fully satisfied in exchange for the treatment of such Claims under the Plan, and holders of Allowed Claims against either Debtor will have recourse solely to the applicable Trust Accounts for the payment of their Allowed Claims in accordance with the terms of the Plan.

7 5     Release of Liens. Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date all

Liens against the property of either Estate will be fully released, and all of the right, title and interest of any holder of such Liens, including any rights to any collateral thereunder, will attach to and be enforceable solely against the applicable Distribution Trust Assets held in the applicable Trust Account in accordance with, and subject to the terms of, the Plan. All such Liens against the Distribution Trust Assets will be fully released upon the holder of the Lien receiving its full distribution under the Plan, or upon the Effective Date if the holder of the Lien is not entitled to any distribution under the Plan.

7.6    Exemption from Certain Taxes. Pursuant to section 1146(c) of the Bankruptcy Code, the following will not be subject to any stamp Tax, real estate transfer Tax, sales or use Tax or similar Tax: (a) any Liquidating Transaction; (b) the execution and implementation of the Distribution Trust Agreement, including any transfers to or by the Distribution Trust; or (c) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including any merger agreements or agreements of consolidation, disposition, liquidation or dissolution executed in connection with any transaction pursuant to the Plan.

## ARTICLE VIII

## DISTRIBUTION TRUST

8.1    Creation.

(a)    On the Effective Date, the Debtors will enter into the Distribution Trust Agreement with the Distribution Trustee, thereby creating the Distribution Trust.

(b)    The Distribution Trust has no objective to, and will not, engage in the conduct of a trade or business and, subject to the terms of the Distribution Trust Agreement, will terminate upon completion of its liquidation and distribution duties.

(c)    The Distribution Trust will be a "representative of the estate" under section 1123(b)(3)(B) of the Bankruptcy Code.

8.2    Distribution Trustee.

(a)    The Distribution Trustee, whose identity and address will be disclosed at least ten days prior to the Confirmation Hearing, will be selected by the Creditors' Committee with the consent of the Debtors, and will be the exclusive trustee of the assets of the Distribution Trust for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3).

(b)    The rights, powers and privileges of the Distribution Trustee (to act on behalf of the Distribution Trust) will be specified in the Distribution Trust Agreement and will include, among others, the authority and responsibility to: (i) accept, preserve, receive, collect, manage, invest, supervise and protect the Distribution Trust Assets (directly or through one or more third-party Disbursing Agents), each in accordance with the Plan and the Distribution Trust Agreement; (ii) liquidate, transfer or otherwise dispose of the Distribution Trust Assets or any part thereof or any interest therein upon such terms as the Distribution Trustee determines to be necessary, appropriate or desirable, pursuant to the procedures for allowing Claims and making distributions prescribed in the Plan, and otherwise consistent with the terms of the Plan; (iii) calculate and make distributions of the Distribution Trust Assets to holders of Allowed Claims pursuant to the procedures for allowing Claims and making distributions prescribed in the Plan; (iv) review, reconcile, settle or object to Claims and resolve any such objections as set forth in the Plan and the Distribution Trust Agreement; (v) comply with the Plan and exercise its rights and fulfill its obligations thereunder; (vi) investigate and, if appropriate, pursue any Recovery Actions or other available causes of action (including any actions previously initiated by the Debtors and pending as of the Effective Date) and raise any defenses in any adverse actions or counter-claims; (vii) retain and compensate, without further order of the Bankruptcy Court, the services of professionals or other persons or entities to represent, advise and assist the Distribution Trustee in the fulfillment of its responsibilities in connection with the Plan and the Distribution Trust Agreement; (viii) take such actions as are necessary, appropriate or desirable, to close the Chapter 11 Cases; (ix) file

appropriate Tax returns on behalf of the Distribution Trust and Debtors and pay Taxes or other obligations owed by the Distribution Trust; (x) exercise the rights, and fulfill the obligations, of the Debtors under the Alpart Purchase Agreement; (xi) take such actions as are necessary, appropriate or desirable to terminate the existence of the Debtors under the laws of Jamaica; and (xii) terminate the Distribution Trust in accordance with the terms of the Plan and the Distribution Trust Agreement.

(c)     Except as otherwise provided in the Plan or the Distribution Trust Agreement, the Distribution Trustee will not be required to obtain the order or approval of the Bankruptcy Court or any other court of competent jurisdiction in, or account to the Bankruptcy Court or any other court of competent jurisdiction for, the exercise of any right, power or privilege conferred under the Distribution Trust Agreement

(d)     Except as otherwise provided in the Plan or the Distribution Trust Agreement, after the Effective Date only the Distribution Trustee, on behalf of the Distribution Trust, with the prior consent of the Steering Committee, acting through a majority thereof, will have the authority to File, settle, compromise, withdraw or litigate to judgment objections to Claims, including pursuant to any alternative dispute resolution or similar procedures approved by the Bankruptcy Court. After the Effective Date, the Distribution Trustee, with the prior consent of the Steering Committee, acting through a majority thereof, may settle or compromise any Disputed Claim without approval of the Bankruptcy Court in accordance with the Distribution Trust Agreement.

(e)     Nothing contained in this Section 8 2 will limit the right of the US Trustee to object to Professional Fee Claims as contemplated by Section 2 2(c)

8 3     Preservation of Causes of Action  Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Distribution Trustee will retain and may enforce any claims, demands, rights and causes of action that either Debtor or Estate may hold against any entity, including the Recovery Actions, to the extent not expressly released under the Plan  Without intending to limit the generality of the foregoing, the Distribution Trustee will retain the right to pursue any adversary proceedings available to the Debtors in connection with the Alpart Purchase Agreement or the Intercompany Claims Settlement

8.4     Reports to be Filed with the Bankruptcy Court

(a)     Within 45 days after the end of each of the first three calendar quarters of the calendar year, the Distribution Trustee, on behalf of the Distribution Trust, will File an unaudited report with the Bankruptcy Court reflecting (i) all Distribution Trust Assets received by the Distribution Trust during such calendar quarter; (ii) all Distribution Trust Assets held by the Distribution Trust at the end of such quarter; and (iii) all Distribution Trust Assets disbursed during such calendar quarter, in each case itemized for the individual Trust Accounts.

(b)     Within 90 days after the end of each calendar year, the Distribution Trustee, on behalf of the Distribution Trust, will File an unaudited report with the Bankruptcy Court reflecting: (i) all Distribution Trust Assets received by the Distribution Trust during such calendar year; (ii) all Distribution Trust Assets held by the Distribution Trust at the end of such calendar year; and (iii) all Distribution Trust Assets disbursed during such calendar year, in each case itemized for the individual Trust Accounts.

(c)     In the event of developments affecting the Distribution Trust in any material respect (as determined by the Distribution Trustee in its reasonable discretion), the Distribution Trustee, on behalf of the Distribution Trust, will File promptly with the Bankruptcy Court a report describing such development in reasonable detail

(d)     Any report required by this Section 8 4 will be in such form as required or approved by the US Trustee.

(e)     The Distribution Trustee will furnish or otherwise make available to any then-current Beneficiary, upon written request, a copy of: (a) the most recent annual receipts/disbursements report referred to in Section 8 4(b); (b) any quarterly receipts/disbursements report referred to in Section 8 4(a) for any period

subsequent to the period covered by the most recent annual receipts/disbursements report (or, if no annual receipts/disbursements report has yet been Filed, for any period subsequent to the Effective Date); or (c) any current report referred to in Section 8 4(c) Filed subsequent to the period covered by the most recent annual receipts/disbursements report (or, if no annual receipts/disbursements report has yet been Filed, subsequent to the Effective Date)

   8.5    Payment of Distribution Trust Expenses. Except as otherwise ordered by the Bankruptcy Court, the Distribution Trustee, in its capacity as Disbursing Agent, will, in its reasonable discretion, pay Distribution Trust Expenses from the Distribution Trust Expenses Account, without the need for further Bankruptcy Court approval.

   8 6    Use of Other Entities. The Distribution Trustee, on behalf of the Distribution Trust, may employ, without further order of the Bankruptcy Court, other entities to assist in or make distributions required by the Plan and the Distribution Trust Agreement and may compensate and reimburse the expenses of those entities, without further order of the Bankruptcy Court, from the Distribution Trust Expenses Account in accordance with the Distribution Trust Agreement.

   8.7    Indemnification. The Distribution Trustee and the members of the Steering Committee will be indemnified as provided in the Distribution Trust Agreement

   8.8    Tax Treatment

   (a)    The Distribution Trust is intended to be treated, for U.S. federal income Tax purposes, in part as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d), for the benefit of the holders of Allowed Claims entitled to distributions of Pending Payments, and otherwise as one or more disputed ownership funds within the meaning of Proposed Treasury Regulations section 1.468B-9(a), as more specifically provided for under the Distribution Trust Agreement. Accordingly, for all federal income Tax purposes the transfer of the Distribution Trust Assets to the Distribution Trust will be treated as: (a) to the extent of Pending Payments, (i) a transfer of the Pending Payments directly from the Debtors to the holders of such Allowed Claims followed by (ii) the transfer of such Pending Payments by such holders of Allowed Claims to the Distribution Trust in exchange for beneficial interests in the Distribution Trust; and (b) to the extent of amounts that are not Pending Payments, as a transfer to one or more disputed ownership funds. Accordingly, the holders of Allowed Claims entitled to distributions of Pending Payments will be treated for federal income Tax purposes as the grantors and deemed owners of their respective shares of the Distribution Trust Assets in the amounts of the Pending Payments and any earnings thereon.

   (b)    The Distribution Trustee will be required by the Distribution Trust Agreement to file federal Tax returns for the Distribution Trust as a grantor trust with respect to any Pending Payments and as one or more disputed ownership funds with respect to all other funds or other property held by the Distribution Trust pursuant to applicable Treasury Regulations, and any income of the Distribution Trust will be treated as subject to Tax on a current basis. The Distribution Trust Agreement will provide that the Distribution Trustee will pay such Taxes from the Distribution Trust Assets as required by law and in accordance with Section 10 2(c). In addition, the Distribution Trust Agreement will require consistent valuation by the Distribution Trustee and the Beneficiaries, for all federal income Tax purposes, of any property held by the Distribution Trust. The Distribution Trust Agreement will provide that termination of the trust will occur no later than two years after the Effective Date, unless the Bankruptcy Court will approve an extension based upon a finding that such an extension is necessary for the Distribution Trust to complete its claims resolution and liquidating purpose. The Distribution Trust Agreement also will limit the investment powers of the Distribution Trustee in accordance with IRS Rev. Proc. 94-45 and will require the Distribution Trust to distribute at least annually to the Beneficiaries (as such may have been determined at such time) its net income (net of any payment of or provision for Taxes), except for amounts retained as reasonably necessary to maintain the value of the Distribution Trust Assets or to meet claims and contingent liabilities (including Disputed Claims).

   8 9    Creation of Trust Accounts. On or prior to the Effective Date, the Trust Accounts will be established in federally insured United States banks in the name of the Distribution Trustee or one or more third-party Disbursing Agents. On the Effective Date, title to each of the Trust Accounts and the contents thereof will be transferred to and irrevocably vest in the Distribution Trust.

8 10    Funding of Distribution Trust Expenses Account.

(a)    Initial Funding  No later than ten days prior to the commencement of the Confirmation Hearing, the Creditors' Committee and the Debtors will agree on the amount to be funded into the Distribution Trust Expenses Account on the Effective Date. On the Effective Date, the Distribution Trust Expenses Account will be funded by the transfer of Cash in such amount from the Distribution Trust Assets. The Distribution Trustee will act as the Disbursing Agent for the Distribution Trust Expenses Account.

(b)    Use of Funds  Funds in the Distribution Trust Expenses Account will be used solely as provided in the Distribution Trust Agreement.

(c)    Subsequent Funding. If the balance of the Distribution Trust Expenses Account is insufficient to make all payments payable therefrom in accordance with the terms of the Plan and the Distribution Trust Agreement, additional Cash may be transferred to the Distribution Trust Expenses Account from the Unsecured Claims Trust Account (to the extent Cash remains available therein) as provided in the Distribution Trust Agreement.

(d)    Excess Funds  If the Distribution Trustee determines that the balance of the Distribution Trust Expenses Account is in excess of the amount that will be sufficient to make all payments payable therefrom in accordance with the terms of the Plan and the Distribution Trust Agreement, the Distribution Trustee, with the consent of the Steering Committee acting through a majority thereof, may transfer such excess to the Unsecured Claims Trust Account as provided in the Distribution Trust Agreement

8 11    Funding of Priority Claims Trust Account.

(a)    Initial Funding  No later than ten days prior to the commencement of the Confirmation Hearing, the Creditors' Committee and the Debtors will agree on the amount to be funded into the Priority Claims Trust Account on the Effective Date. On the Effective Date, the Priority Claims Trust Account will be funded by the transfer of Cash in such amount from the Distribution Trust Assets. For purposes of this Section 8.11, any and all Taxes ultimately determined to be due and owing from the Debtors to the Government of Jamaica for any taxable period (including interest and penalties, if any, determined and calculated under applicable Jamaican law without regard to the provisions of section 502(b)(2) of the Bankruptcy Code or any other provision of U.S. federal, state or local law) will be treated as Allowed Priority Tax Claims or Allowed Administrative Claims, as the case may be, and will be paid in full in Cash in accordance with the provisions of Section 9.4(a); provided, however, that any liability of the Debtors to the Australian Tax Office for income or capital gains Taxes for any period shall not exceed the amount of such Taxes, if any, determined in writing by the Australian Tax Office to be due and payable for such period.. Until such determination, any such potential Tax obligation in respect of the Jamaican Tax Claims will be treated as a Disputed Claim

(b)    Use of Funds. Cash deposited in the Priority Claims Trust Account will be used solely as provided in the Distribution Trust Agreement.

(c)    Subsequent Funding. If the balance of the Priority Claim Trust Account is insufficient to make all payments payable therefrom in accordance with the terms of the Plan and the Distribution Trust Agreement, additional funds may be transferred from the Unsecured Claims Trust Account (to the extent Cash remains available therein) to the Priority Claims Trust Account as provided in the Distribution Trust Agreement

(d)    Excess Funds. If the Distribution Trustee determines that the balance of the Priority Claims Trust Account is in excess of the amount that will be sufficient to make all payments payable therefrom in accordance with the terms of the Plan and the Distribution Trust Agreement, the Distribution Trustee, with the consent of the Steering Committee acting through a majority thereof, may transfer such excess to the Unsecured Claims Trust Account as provided in the Distribution Trust Agreement

8.12    Funding of Unsecured Claims Trust Account.

(a)    Initial Funding.  On the Effective Date, after the initial funding of the Distribution Trust Expenses Account in accordance with Section 8.10(a) and the initial funding of the Priority Claims Trust Account in accordance with Section 8.11(a), the Distribution Trustee will (i) allocate from the Distribution Trust Assets to the Public Note Distributable Consideration Cash in an amount equal to the fees contemplated by clause (b) of Section 1.1(90), (ii) pay from the Distribution Trust Assets any payment required under the Intercompany Settlement Agreement, and (iii) thereafter fund the Unsecured Claims Trust Account with the remainder of the Distribution Trust Assets, all as provided in the Distribution Trust Agreement.

(b)    Use of Funds.  Cash in the Unsecured Claims Trust Account will be used solely as provided in the Distribution Trust Agreement

(c)    Additional Deposits.  Any Cash that becomes available to the Distribution Trust following the Effective Date will be deposited in the Unsecured Claims Trust Account as provided in the Distribution Trust Agreement.

8.13    Undeliverable Cash Trust Account.  After the Effective Date, if any distribution to a holder of an Allowed Unsecured Claim is returned to the Disbursing Agent as undeliverable, the Disbursing Agent will deposit the undeliverable Cash in the Undeliverable Cash Trust Account  The Disbursing Agent will hold such funds, in a book-entry sub-account in the Undeliverable Cash Trust Account, for the benefit of such holder.  Until such holder notifies the Disbursing Agent in writing of its then-current address, as contemplated by Section 9.2(c), no attempt will be made to deliver subsequent distributions to such holder and any such distributions that such holder would otherwise be entitled to receive instead will be transferred from the Unsecured Claims Trust Account to the Undeliverable Cash Trust Account and credited to such book-entry sub-account  All Cash held in such book-entry sub-account for the benefit of such holder will be invested by the Disbursing Agent in a manner consistent with the investment and deposit guidelines set forth in the Distribution Trust Agreement  Any income or interest generated from such investment activities will be held in such book-entry sub-account for the benefit of such holder until such holder notifies the Disbursing Agent in writing of its then-current address as contemplated by Section 9.2(c)  Subject to Section 9.2(c)(ii), when such holder notifies the Disbursing Agent in writing of its then-current address as contemplated by Section 9.2(c), the Disbursing Agent will deliver to such holder all Cash contained in such book-entry sub-account (net of provision for Taxes)  In the event such holder's right to assert a claim for undeliverable distributions is forfeited as contemplated by Section 9.2(c)(ii), all Cash contained in such book-entry sub-account will be transferred from the Undeliverable Cash Trust Account to the Unsecured Claims Trust Account for redistribution to holders of Allowed Unsecured Claims entitled to distributions therefrom.

## ARTICLE IX

## PROVISIONS GOVERNING DISTRIBUTIONS

9.1    Method of Distributions to Holders of Allowed Claims.  The Disbursing Agent will make all distributions of Cash required under the Plan  The Disbursing Agent will serve without bond, and may employ or contract with other entities to assist in, or make the distributions required by, the Plan.

9.2    Delivery of Distributions

(a)    Generally.  Except as otherwise provided in the Plan, distributions in respect of Allowed Claims will be made to the holders of such Claims as of the Distribution Record Date at the addresses set forth in the applicable Claims Report  Prior to making any distribution to a Beneficiary, the Disbursing Agent may request written notification of the Beneficiary's federal taxpayer identification number or social security number if the Disbursing Agent determines, in its reasonable discretion, that such information (a) is necessary to fulfill its Tax reporting and withholding obligations and (b) has not been provided in the applicable Claims Report or otherwise.  The Disbursing Agent, in its reasonable discretion, may suspend distributions to any Beneficiary that has not provided its federal taxpayer identification number or social security number, as the case may be, after a request is made pursuant to and in accordance with the terms of this Section 9.2(a).

    (b)    <u>Distributions to Holders of Public Note Claims</u>. All distributions to holders of Allowed Public Note Claims will be made by the Distribution Trustee to the applicable Indenture Trustee for subsequent distribution to holders of Allowed Public Note Claims as of the Distribution Record Date.

    (c)    <u>Undeliverable Distributions</u>

    (i)    *No Further Attempts at Delivery*. If any distribution to a holder of an Allowed Unsecured Claim is returned to the Disbursing Agent as undeliverable, then unless and until the Disbursing Agent is notified in writing of such holder's then-current address: (A) subject to Section 9.2(c)(ii), such undeliverable distributions will remain in the possession of the Disbursing Agent as provided in Section 8.13 and no further attempt will be made to deliver such distribution; and (B) no attempt will be made to deliver subsequent distributions to such holder and any such distributions that such holder would otherwise be entitled to receive instead will be treated as provided in Section 8.13

    (ii)    *Forfeiture and Redistribution* Any holder of an Allowed Unsecured Claim that does not assert a claim for an undeliverable distribution by delivering to the Disbursing Agent a written notice setting forth such holder's then-current address within 180 days after the later of (A) the Effective Date and (B) the last date on which a distribution was deliverable to the holder will have its claim for undeliverable distributions discharged and will be forever barred from asserting such claim or any claim for subsequent distributions against the Debtors, the Disbursing Agent or the property of any of them, including the Trust Accounts, whereupon all Cash contained in the book-entry sub-account in the Undeliverable Cash Trust Account created for the benefit of such holder will be transferred to the Unsecured Claims Trust Account for redistribution to holders of Allowed Unsecured Claims entitled to distributions therefrom. For purposes of any such redistribution, each Allowed Claim in respect of which a claim for undeliverable distributions has been discharged as contemplated by this Section 9.2(c)(ii) will be deemed disallowed in its entirety.

    (iii)    *No Requirement to Attempt to Locate Holders*. Nothing contained in the Plan will require the Debtors or the Disbursing Agent to attempt to locate any holder of an Allowed Claim

    9.3    <u>Means of Cash Payments</u>. Except as otherwise provided in the Plan or the Distribution Trust Agreement, Cash payments made pursuant to the Plan will be in United States currency by checks drawn on the applicable Trust Accounts or, at the option of the Disbursing Agent, by wire transfer from a domestic bank; *provided, however*, that Cash payments to foreign holders of Allowed Claims may be made, at the option of the Disbursing Agent, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction. If a check included in a distribution to a holder of an Allowed Unsecured Claim is not cashed within 180 days of the issuance thereof, the Disbursing Agent will void such check and such distribution will be treated as undeliverable in accordance with Section 9.2(c)

    9.4    <u>Timing and Calculation of Amounts to Be Distributed</u>

    (a)    <u>Allowed Claims Other Than Unsecured Claims</u>. On or as promptly as practicable after the Effective Date, the Disbursing Agent will make distributions to holders of Secured Claims, Administrative Claims, Priority Claims and Priority Tax Claims allowed as of the Effective Date. On or as promptly as practicable after each Quarterly Distribution Date, the Disbursing Agent will make distributions to holders of Disputed Secured Claims, Disputed Administrative Claims, Disputed Priority Claims and Disputed Priority Tax Claims that have become Allowed Claims during the immediately preceding calendar quarter Notwithstanding the foregoing, if the Disbursing Agent determines, in its reasonable discretion, that the amount of any quarterly distribution is too small to justify the administrative costs associated with such distribution, the Disbursing Agent may postpone such quarterly distribution until the next Quarterly Distribution Date. The Disbursing Agent will have no obligation to notify Beneficiaries if it determines, in its reasonable discretion, that any quarterly distribution will be postponed.

(b) <u>Allowed Unsecured Claims in Subclass 3A; Certain Payments from the Public Note Distributable</u> <u>Consideration.</u>

(i) *Plan Accepted by Subclass 3A and Subclass 3B*

(A) If both Subclass 3A and Subclass 3B vote to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code, on or as promptly as practicable after the Effective Date, the Disbursing Agent will: (i) make distributions to holders of Allowed Claims in Subclass 3A in accordance with Section 2.4(c)(i)(A); *provided* that the amount of such distributions will be calculated as if each Disputed Unsecured Claim in Subclass 3D were an Allowed Unsecured Claim in its Face Amount as of the Effective Date; and (ii) make the payments to be deducted from the Public Note Distributable Consideration as contemplated by clauses (I) and (II) of the first sentence of Section 2.4(c)(i)(A).

(B) If both Subclass 3A and Subclass 3B vote to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code, on or as promptly as practicable after each Quarterly Distribution Date, the Disbursing Agent will distribute to each holder of an Allowed Claim in Subclass 3A a distribution from the Unsecured Claims Trust Account (net of provision for Taxes) in an amount equal to: (a) the amount of Cash that such holder would have been entitled to receive pursuant to the Plan if such Claim and each other Unsecured Claim allowed prior to such Quarterly Distribution Date had been an Allowed Unsecured Claim as of the Effective Date (with such amount to be calculated in the manner described in Section 9.4(b)(i)(A)) minus (b) the aggregate amount of Cash previously distributed on account of such Claim. Notwithstanding the foregoing, if the Disbursing Agent determines, in its reasonable discretion, that the amount of any quarterly distribution is too small to justify the administrative costs associated with such distribution, the Disbursing Agent may postpone such quarterly distribution until the next Quarterly Distribution Date. The Disbursing Agent will have no obligation to notify Beneficiaries if it determines, in its reasonable discretion, that any quarterly distribution will be postponed. In the event the disallowance of a Disputed Unsecured Claim in Subclass 3D, any amounts held in respect thereof will be released from the Disputed Claims Reserve for distribution in accordance with this Section 9.4(b)(i) and Section 9.4(d).

(ii) *Plan Rejected by Subclass 3A or Subclass 3B.* If either Subclass 3A or Subclass 3B fails to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code, the amount of the Public Note Distributable Consideration to which the Bankruptcy Court determines the holders of Allowed Claims in Subclass 3A are entitled in respect of such Claims will be distributed as provided in an order of the Bankruptcy Court and the Disbursing Agent will, contemporaneously or as promptly as practicable thereafter, make the payments (or reservations for payment) by which such distributions are to be reduced in accordance with Section 2.4(a)(i)(B).

(c) <u>Allowed Unsecured Claims in Subclass 3B</u>

(i) *Plan Accepted by Subclass 3A and Subclass 3B.* If both Subclass 3A and Subclass 3B vote to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code, on or as promptly as practicable after the Effective Date, the Disbursing Agent will make the payment to the Senior Subordinated Note Indenture Trustee as contemplated by clause (III) of the first sentence of Section 2.4(c)(i)(A) and Section 2.4(c)(ii)(A) for subsequent distribution by the Senior Subordinated Note Indenture Trustee to the holders of Allowed Claims in Subclass 3B.

(ii) *Plan Rejected by Subclass 3A or Subclass 3B.* If either Subclass 3A or Subclass 3B fails to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code, the amount of the Public Note Distributable Consideration, if any, to which the Bankruptcy Court determines the holders of Allowed Claims in Subclass 3B are entitled in respect of such Claims will be distributed as

provided in an order of the Bankruptcy Court. As contemplated by Section 2.4(c)(ii)(B), any such distributions ultimately made to a holder of an Allowed Claim in Subclass 3B may be reduced by such holder's proportional share of any and all fees and expenses payable to the Senior Subordinated Note Indenture Trustee pursuant to the Senior Subordinated Note Indenture, which will, subject to such Trustee's right to seek payment by the Debtors of such fees and expenses pursuant to section 503(b)(5) of the Bankruptcy Code, be payable solely from such distributions.

(d)    Allowed Unsecured Claims in Subclass 3C and Subclass 3D.

(i)    On or as promptly as practicable after the Effective Date, the Disbursing Agent will make distributions to holders of Unsecured Claims in Subclass 3C and Subclass 3D allowed as of the Effective Date; *provided* that the amount of such distributions will be calculated as if each Disputed Unsecured Claim in Subclass 3D were an Allowed Unsecured Claim in its Face Amount as of the Effective Date; *provided further, however*, that no distribution will be made on account of any Disputed Unsecured Claim in Subclass 3D unless and until it becomes an Allowed Unsecured Claim and amounts withheld for Disputed Unsecured Claims in Subclass 3D will remain in the Unsecured Claims Trust Account as part of the Disputed Claims Reserve.

(ii)    On or as promptly as practicable after each Quarterly Distribution Date, the Disbursing Agent will distribute to each holder of an Unsecured Claim in Subclass 3C or Subclass 3D allowed prior to such Quarterly Distribution Date a distribution from the Unsecured Claims Trust Account (net of provision for Taxes) in an amount equal to: (a) the amount of Cash that such holder would have been entitled to receive pursuant to the Plan if such Claim and each other Unsecured Claim allowed prior to such Quarterly Distribution Date had been an Allowed Unsecured Claim as of the Effective Date (with such amount to be calculated in the manner described in Section 9.4(d)(i)(A)) minus (b) the aggregate amount of Cash previously distributed on account of such Claim. Notwithstanding the foregoing, if the Disbursing Agent determines, in its reasonable discretion, that the amount of any quarterly distribution is too small to justify the administrative costs associated with such distribution, the Disbursing Agent may postpone such quarterly distribution until the next Quarterly Distribution Date. The Disbursing Agent will have no obligation to notify Beneficiaries if it determines, in its reasonable discretion, that any quarterly distribution will be postponed. In the event of the disallowance of a Disputed Unsecured Claim in Subclass 3D, any amounts held in respect thereof will be released from the Disputed Claims Reserve for distribution in accordance with Section 9.4(b)(i) and this Section 9.4(d).

(e)    7-3/4% SWD Revenue Bonds.

(i)    *Plan Accepted by Subclass 3A*. If (i) Subclass 3A votes to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code and (ii) unless the holders of Senior Note Claims otherwise agree pursuant to a settlement, all holders of Allowed Senior Note Claims are entitled under the Plan to identical treatment in respect of contractual subordination claims under the Senior Subordinated Note Indenture, then, on or as promptly as practicable on the Effective Date the Disbursing Agent will make the payment, if any, to the 7-3/4% SWD Revenue Bond Indenture Trustee for the benefit of holders of 7-3/4% SWD Revenue Bonds pursuant to Section 2.5(a) and pay any amounts payable pursuant to Section 2.6(b).

(ii)    *Plan Rejected by Subclass 3A*. If Subclass 3A fails to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code, the amount of the Public Note Distributable Consideration, if any, to which the Bankruptcy Court determines the holders of 7-3/4% SWD Revenue Bonds are entitled will be distributed as provided in an order of the Bankruptcy Court.

(f)    Application of Distributions to Holders of Public Note Claims and 7-3/4% SWD Revenue Bonds. All distributions to a holder of an Allowed Public Note Claim or a holder of a 7-3/4% SWD Revenue Bond will be deemed to apply first to the principal amount of such Claim or 7-3/4% SWD Revenue Bond until such principal amount is paid in full, and then the remaining portion of such distributions, if any, will be deemed to apply to any prepetition accrued interest included in such Claim or in respect of such 7-3/4% SWD Revenue Bond.

(g)    No *De Minimis* Distributions.  The Disbursing Agent will not be required to distribute Cash to the holder of an Allowed Unsecured Claim if the total aggregate amount of Cash to be distributed on account of such Claim is less than $25.  Any holder of an Allowed Unsecured Claim on account of which the total aggregate amount of Cash to be distributed is less than $25 will have its claim for such distribution deemed satisfied, waived and released and will be forever barred from asserting any such Claim against the Debtors, the Distribution Trustee, the Disbursing Agent or the property of any of them, including the Trust Accounts.  Any Cash not distributed with respect to Allowed Unsecured Claims as a result of the provisions of this Section 9.4(g) will be retained in the Unsecured Claims Trust Account for redistribution to other holders of Allowed Unsecured Claims entitled to distributions from the Unsecured Claims Trust Account.

(h)    Compliance with Tax Requirements.  To the extent applicable, the Disbursing Agent will comply with all Tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan will be subject to such withholding and reporting requirements.  The Disbursing Agent will be authorized to take any actions that it determines, in its reasonable discretion, to be necessary, appropriate or desirable to comply with such withholding and reporting requirements.  Notwithstanding any other provision of the Plan or the Distribution Trust Agreement, each entity receiving a distribution of Cash pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed on it by any governmental unit on account of such distribution, including income, withholding and other Tax obligations.

9.5    Setoffs.  Except with respect to claims of a Debtor released pursuant to the Plan or any contract, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, the Distribution Trustee or any other Disbursing Agent may, pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim (before any distribution is made on account of such Claim) the claims, rights and causes of action of any nature that the applicable Debtor may hold against the holder of such Allowed Claim; *provided, however*, that neither the failure to effect a setoff nor the allowance of any Claim hereunder will constitute a waiver or release by the applicable Debtor of any claims, rights and causes of action that the Debtor or Debtors may possess against such a Claim holder, which are preserved under the Plan.

9.6    Compensation and Reimbursement for Services Related to Distributions.  If the Distribution Trustee employs or contracts with a third-party Disbursing Agent, such Disbursing Agent will receive, without the need for further Bankruptcy Court approval, reasonable compensation for such services and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services.  These payments will be made on terms agreed to with the Distribution Trustee and will be paid to such Disbursing Agent from funds in the Distribution Trust Expenses Account.  To assist in making distributions under the Plan, notwithstanding any other provision of the Plan, the applicable Trust Accounts (other than the Distribution Trust Expenses Account) may be held in the name of one or more such Disbursing Agents.  Any such Disbursing Agent will invest the Cash in the Trust Accounts as directed by the Distribution Trustee, who will direct such Disbursing Agent to invest such Cash only in Permitted Investments; *provided, however*, that should the Distribution Trustee determine, in its reasonable discretion, that the administrative costs associated with such investment will exceed the return on such investment, it may direct such Disbursing Agent to not invest such Cash.

9.7    Payments Limited to Trust Accounts.  All payments or other distributions to be made by the Distribution Trustee in accordance with the Plan or the Distribution Trust Agreement will be made only from the Trust Accounts.

9.8    Insufficient Funds.  Provided that the Disbursing Agent has not acted in bad faith, engaged in fraud, willful misconduct or gross negligence or breached its fiduciary duties, if the Distribution Trust Assets at any point prove insufficient to pay all Beneficiaries of the Priority Claims Trust Account in full or all Beneficiaries of the Unsecured Claims Trust Account in accordance with the terms of the Plan, the Disbursing Agent will have no obligation to seek disgorgement from any Beneficiary, but may seek the guidance of the Bankruptcy Court or another court of competent jurisdiction.

## ARTICLE X

### DISPUTED CLAIMS

10.1    Prosecution of Objections to Claims.  All objections to Claims must be Filed and served on the holders of such Claims by the Claims Objection Bar Date, and, if Filed prior to the Effective Date, such objections will be served on the parties on the then-applicable service list in the Chapter 11 Cases  If an objection has not been Filed to a proof of Claim, a scheduled Claim or a request for payment of Administrative Claim by the applicable Claims Objection Bar Date, the Claim to which the proof of Claim, scheduled Claim or request for payment of Administrative Claim relates will be treated as an Allowed Claim if such Claim has not been allowed earlier.

10.2    Treatment of Disputed Claims.

(a)    No Payments on Account of Disputed Claims and Disputed Claims Reserves.  Notwithstanding any other provisions of the Plan, no payments or distributions will be made on account of a Disputed Claim until such Claim becomes an Allowed Claim.  In lieu of distributions under the Plan to holders of Disputed Claims, a Disputed Claims Reserve will be established on the Effective Date in each Trust Account, which, in the case of Unsecured Claims in Subclass 3D, will include an amount equal to the Pro Rata Share of the distribution to which all of the Disputed Claims in Subclass 3D would be entitled if such Disputed Claim was allowed in its Face Amount on the Effective Date.

(b)    Recourse.  Each holder of a Disputed Claim that ultimately becomes an Allowed Claim will have recourse only to the undistributed Cash held in the applicable Trust Account for the satisfaction of such Allowed Claim and not to any other Trust Account or any assets previously distributed on account of any Allowed Claim

(c)    Tax Requirements for Income Generated by Disputed Claim Reserves.  The Distribution Trustee will include in the Tax returns of the Trust Accounts all items of income, deduction and credit of the Trust Accounts, except to the extent such items are included in the income of the Beneficiaries of the Trust Accounts as grantors of grantor trusts  The Distribution Trustee will pay, or cause to be paid, out of the funds held in applicable Trust Accounts, any Tax imposed on the Trust Accounts by any governmental unit with respect to income generated by the funds held in the Trust Accounts  The Distribution Trustee also will file or cause to be filed any Tax or information return related to the applicable Trust Account that is required by any governmental unit

## ARTICLE XI

### RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain all such jurisdiction over the Chapter 11 Cases after the Effective Date as is legally permissible, including jurisdiction to:

(a)    Allow, disallow, determine, liquidate, classify, reclassify, estimate or establish the priority, secured or unsecured status (or proper Plan classification) of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim, and the resolution of any objections to the allowance, priority, or classification of Claims or Interests;

(b)    Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan for periods ending on or before the Effective Date;

(c)    Resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which either Debtor is a party or with respect to which either Debtor may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(d)    Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(e)     Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, including the Recovery Actions and claims of the holders of the 7-3/4% SWD Revenue Bonds in respect of subordination rights under the Senior Subordinated Note Indenture, and grant or deny any applications involving the Debtors or the Distribution Trustee that may be pending on the Effective Date or brought thereafter;

(f)     Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order, including the Distribution Trust Agreement;

(g)     Resolve any cases, controversies, suits or disputes that may arise in connection with the Recovery Actions or the consummation, interpretation, or enforcement of the Plan or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to the Plan (including the Distribution Trust Agreement), or any entity's rights arising from or obligations incurred in connection with the Plan or such documents;

(h)     Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code; modify the Confirmation Order, or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document entered into, delivered or created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

(i)     Issue injunctions, enforce the injunctions contained in the Plan and the Confirmation Order, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

(j)     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or distributions pursuant to the Plan are enjoined or stayed;

(k)     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(l)     Enter a final decree closing the Chapter 11 Cases in accordance with the Bankruptcy Rules; and

(m)     Determine matters concerning state, local and federal Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, including any Disputed Claims for Taxes.

## ARTICLE XII

### MISCELLANEOUS PROVISIONS

12.1    Preservation of Insurance.

(a)     Nothing in the Plan will diminish or impair the enforceability of any insurance policies that may cover Claims against either Debtor

(b)     Nothing in the Plan or in the Confirmation Order shall preclude any entity from asserting in any proceeding any and all claims, defenses, rights or causes of action that it has or may have under or in connection with any insurance policy or insurance settlement agreement  Nothing in the Plan or the Confirmation Order shall be deemed to waive any claims, defense, rights or causes of action that any entity has or may have under the provisions, terms, conditions, defenses and/or exclusions contained in such policies or settlements.

(c)     Notwithstanding the provisions of Section 12.1(b) and the substantial consummation of the Plan, in connection with any possible settlements made in any of the Kaiser Cases which concern any insurance policies, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases to issue or approve buybacks of such insurance policies under section 363 of the Bankruptcy Code and/or to issue or approve injunctions, releases and/or exculpations under the Bankruptcy Code (including, without limitation, section 105 of the Bankruptcy Code) for purposes of, *inter alia*, protecting any such settling insurers against claims or demands made against the Debtors  In this regard, as between KACC and the Debtors, KACC will have full and sole right and authority to settle, release, compromise and enter into buybacks by insurers of insurance policies as to which the Debtors, or any of them, have or may assert rights as an insured  The Debtors shall not be entitled to any consideration or other value as a result of any such exercise of rights by KACC.

12.2    <u>Modification of the Plan</u>  Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code, the Debtors reserve the right to alter, amend or modify the Plan before its substantial consummation, with the consent of the Creditors' Committee

12.3    <u>Revocation of the Plan</u>.  The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date, with the consent of the Creditors' Committee.  If the Debtors so revoke or withdraw the Plan, or if confirmation of the Plan does not occur, the Plan will be null and void in all respects, and nothing contained in the Plan will:  (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors; or (b) prejudice in any manner the rights of either Debtor or any other party.

12.4    <u>Limitation on Certain Actions</u>.  Notwithstanding any other provision in the Plan, the Plan shall not be amended, modified, revoked or withdrawn with the intent of altering or undermining in any way the Bankruptcy Court's determination of the respective entitlement of holders of Allowed Claims under Sections 2 4(c)(i)(B) and 2 4(c)(ii)(B).

12.5    <u>Severability of Plan Provisions</u>.  If, prior to confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted; *provided, however,* that any such alteration or interpretation must be in form and substance acceptable to the Debtors and the Creditors' Committee. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms

12.6    <u>Notices</u>.  Any pleading, notice, or other document required by the Plan or Confirmation Order to be served on or delivered to the Debtors, the Distribution Trustee or the Creditors' Committee must be sent by overnight delivery service, facsimile transmission, courier service, or messenger to:

(a)     <u>The Debtors:</u>

> Daniel J. DeFranceschi
> RICHARDS, LAYTON & FINGER, P A.
> One Rodney Square
> P.O. Box 551
> Wilmington, Delaware  19899
> Facsimile:  (302) 651-7701

Gregory M. Gordon
Henry L. Gompf
Troy B. Lewis
Daniel P. Winikka
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
Facsimile (214) 969-5100

(Counsel to the Debtors)

(b)    The Distribution Trustee:

Distribution Trustee
[The identity and address of the Distribution Trustee to be disclosed at least ten days prior to the
Confirmation Hearing as provided in Section 8.2(a).]

(c)    The Creditors' Committee:

Lisa G. Beckerman
AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.
590 Madison Avenue
New York, NY 10022

William P. Bowden
ASHBY & GEDDES
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899

(Counsel to the Creditors' Committee)

12.7    Successors and Assigns  The rights, benefits, and obligations of any entity named or referred to in
the Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor, or assign of
such entity, regardless of whether such entity voted to accept the Plan.

12.8    Further Action  Nothing contained in the Plan will prevent the Debtors or the Distribution Trustee
from taking such actions as may be necessary to consummate the Plan, even though such actions may not be
specifically provided for within the Plan.

12.9    Exhibits  All Exhibits to the Plan are incorporated by reference and are intended to be an integral
part of this document as though fully set forth in the Plan.

Dated:  February 25, 2005

Respectfully submitted,

ALPART JAMAICA INC.

By:_____
Name:
Title:


KAISER JAMAICA CORPORATION

By:_____
Name:
Title:


COUNSEL:

_____

Daniel J. DeFranceschi (DE 2732)
RICHARDS, LAYTON & FINGER, P A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware  19899
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

    – and –

Gregory M. Gordon (TX 08435300)
Henry L. Gompf (TX 08116400)
Troy B. Lewis (TX 12308650)
Daniel P. Winikka (TX 00794873)
JONES DAY
2727 North Harwood Street
Dallas, Texas  75201
Telephone:  (214) 220-3939
Facsimile:  (214) 969-5100

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

DLI-5900993v10

# TAB "2"

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------x
                            :

In re:                    :         Chapter 11 Case Nos.

KAISER ALUMINA AUSTRALIA    :       02-10432 and 02-10438
CORPORATION            :
and                    :
KAISER FINANCE CORPORATION,  :       Jointly Administered Under
                            :       Case No. 02-10429 (JKF)

          Debtors.     :
                            :
-------------------------------------------------x

## THIRD AMENDED JOINT PLAN OF LIQUIDATION
## FOR KAISER ALUMINA AUSTRALIA CORPORATION
## AND KAISER FINANCE CORPORATION

Daniel J. DeFranceschi (DE 2732)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

- and -

Gregory M. Gordon (TX 08435300)
Henry L. Gompf (TX 08116400)
Troy B. Lewis (TX 12308650)
Daniel P. Winikka (TX 00794873)
JONES DAY
2727 North Harwood
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

Dated: February 25, 2005

## TABLE OF CONTENTS

Page

ARTICLE I    DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME . . . . . . 1
   1.1    Defined Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   1.2    Rules of Interpretation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
   1.3    Computation of Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
ARTICLE II    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS . . . . . . . . . . . . 10
   2.1    General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   2.2    Administrative Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   2.3    Priority Tax Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
   2.4    Classified Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
   2.5    7-3/4% SWD Revenue Bond Dispute and Settlement. . . . . . . . . . . . . . . . . . . . . 14
   2.6    Senior Note Indenture Trustee and Ad Hoc Group Counsel Fees and Expenses; 7-3/4% SWD Revenue Bond Plaintiffs' Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
   2.7    Allowance of Certain Public Note Claims . . . . . . . . . . . . . . . . . . . . . . . . 15
   2.8    Substantive Consolidation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
   2.9    Order Granting Substantive Consolidation . . . . . . . . . . . . . . . . . . . . . . . 15
   2.10    KFC Claim against KACC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
   2.11    No Effect on Claims Against or Interests in Other Kaiser Debtors . . . . . . . . . . . 16
ARTICLE III    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES . . . . . . . . . . . 16
   3.1    Executory Contracts and Unexpired Leases to Be Rejected. . . . . . . . . . . . . . . . 16
   3.2    Bar Date for Rejection Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
ARTICLE IV    RELEASE, LIMITATION OF LIABILITY AND INJUNCTION PROVISIONS . . . . . . . . . . 16
   4.1    Release of Claims; Limitation of Liability. . . . . . . . . . . . . . . . . . . . . . . 16
   4.2    Injunctions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
   4.3    No Discharge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
ARTICLE V    CRAMDOWN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
ARTICLE VI    CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
   6.1    Conditions to Confirmation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
   6.2    Conditions to the Effective Date . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
   6.3    Waiver of Conditions to the Confirmation or Effective Date . . . . . . . . . . . . . . 18
ARTICLE VII    MEANS FOR IMPLEMENTATION OF THE PLAN . . . . . . . . . . . . . . . . . . . . . 19
   7.1    Liquidating Transactions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
   7.2    Corporate Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
   7.3    No Revesting of Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
   7.4    Recourse Solely to Trust Accounts . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

i

**TABLE OF CONTENTS**
(continued)

Page

| 7.5 | Release of Liens | 19 |
| 7.6 | Exemption from Certain Taxes | 19 |
| ARTICLE VIII | DISTRIBUTION TRUST | 20 |
| 8.1 | Creation | 20 |
| 8.2 | Distribution Trustee | 20 |
| 8.3 | Preservation of Causes of Action | 21 |
| 8.4 | Reports to be Filed with the Bankruptcy Court | 21 |
| 8.5 | Payment of Distribution Trust Expenses | 22 |
| 8.6 | Use of Other Entities | 22 |
| 8.7 | Indemnification | 22 |
| 8.8 | Tax Treatment | 22 |
| 8.9 | Creation of Trust Accounts | 22 |
| 8.10 | Funding of Distribution Trust Expenses Account | 22 |
| 8.11 | Funding of Priority Claims Trust Account | 23 |
| 8.12 | Funding of Unsecured Claims Trust Account | 24 |
| 8.13 | Undeliverable Property Trust Account | 24 |
| ARTICLE IX | PROVISIONS GOVERNING DISTRIBUTIONS | 24 |
| 9.1 | Method of Distributions to Holders of Allowed Claims | 24 |
| 9.2 | Delivery of Distributions | 24 |
| 9.3 | Means of Cash Payments | 25 |
| 9.4 | Timing and Calculation of Amounts to Be Distributed | 25 |
| 9.5 | Setoffs | 28 |
| 9.6 | Compensation and Reimbursement for Services Related to Distributions | 28 |
| 9.7 | Payments Limited to Trust Accounts | 29 |
| 9.8 | Insufficient Assets | 29 |
| 9.9 | Distributions of Securities | 29 |
| ARTICLE X | DISPUTED CLAIMS | 29 |
| 10.1 | Prosecution of Objections to Claims | 29 |
| 10.2 | Treatment of Disputed Claims | 29 |
| ARTICLE XI | RETENTION OF JURISDICTION | 30 |
| ARTICLE XII | MISCELLANEOUS PROVISIONS | 31 |
| 12.1 | Preservation of Insurance | 31 |
| 12.2 | Modification of the Plan | 31 |
| 12.3 | Revocation of the Plan | 31 |

**TABLE OF CONTENTS**
(continued)

Page

| | | |
|---|---|---|
| 12.4 | Limitation on Certain Actions | 31 |
| 12.5 | Severability of Plan Provisions | 32 |
| 12.6 | Notices | 32 |
| 12.7 | Successors and Assigns | 33 |
| 12.8 | Further Action | 33 |
| 12.9 | Exhibits | 33 |

## TABLE OF EXHIBITS[*]

Exhibit A — Distribution Trust Agreement

---

[*] The Plan, Disclosure Statement and Distribution Trust Agreement will be available on the Document Website promptly following approval of the Disclosure Statement by the Bankruptcy Court

## INTRODUCTION

Kaiser Alumina Australia Corporation ("KAAC") and Kaiser Finance Corporation ("KFC") (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") propose the following joint plan of liquidation (the "Plan") for the resolution of the outstanding claims against and equity interests in the Debtors

## ARTICLE I

### DEFINED TERMS, RULES OF INTERPRETATION
### AND COMPUTATION OF TIME

1 1    Defined Terms.

As used in the Plan, capitalized terms have the meanings set forth below  Any term that is not otherwise defined in the Plan, but that is defined in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given to that term in the Bankruptcy Code or Bankruptcy Rules, as applicable

(1)    "7-3/4% SWD Revenue Bond Dispute" means Adversary Proceeding No. 04-51165 commenced by the 7-3/4% SWD Revenue Bond Indenture Trustee and certain holders of 7-3/4% SWD Revenue Bonds in connection with the Kaiser Cases.

(2)    "7-3/4% SWD Revenue Bond Indenture" means the Trust Indenture, dated as of December 1, 1992, between Parish of St. James, State of Louisiana, and the 7-3/4% SWD Revenue Bond Indenture Trustee, together with all instruments and agreements related thereto

(3)    "7-3/4% SWD Revenue Bond Indenture Trustee" means J P. Morgan Trust Company, N A , as successor indenture trustee under the 7-3/4% SWD Revenue Bond Indenture

(4)    "7-3/4% SWD Revenue Bonds" means the Parish of St. James, State of Louisiana, Solid Waste Disposal Revenue Bonds (Kaiser Aluminum Project) Series 1992 issued pursuant to the 7-3/4% SWD Revenue Bond Indenture in an outstanding principal amount of $20,000,000.

(5)    "9-7/8% Senior Note Claim" means a Claim against a Debtor under or in respect of one or more 9-7/8% Senior Notes and the 9-7/8% Senior Note Indenture

(6)    "9-7/8% Senior Note Indenture" means the Indenture, dated as of February 17, 1994, by and among the Debtors, certain Other Kaiser Debtors (including KACC) and the 9-7/8% Senior Note Indenture Trustee, as the same may have been subsequently modified, amended or supplemented, together with all instruments and agreements related thereto.

(7)    "9-7/8% Senior Note Indenture Trustee" means U S. Bank National Association, as successor indenture trustee under the 9-7/8% Senior Note Indenture

(8)    "9-7/8% Senior Notes" means the 9-7/8% senior notes due 2002, issued by KACC pursuant to the 9-7/8% Senior Note Indenture in an outstanding principal amount of $172,780,000.

(9)    "10-7/8% Senior Note Claim" means a Claim against a Debtor under or in respect of one or more 10-7/8% Senior Notes and the applicable 10-7/8% Senior Note Indenture

(10)    "10-7/8% Senior Note Indentures" means, together, the Indenture, dated as of October 23, 1996, and the Indenture, dated as of December 23, 1996, in each case, by and among the Debtors, certain Other Kaiser Debtors (including KACC) and the 10-7/8% Senior Note Indenture Trustee, as the same may have been subsequently modified, amended or supplemented, together with all instruments and agreements related thereto.

(11)    "10-7/8% Senior Note Indenture Trustee" means U S  Bank National Association, as successor indenture trustee under the 10-7/8% Senior Note Indentures

(12)    "10-7/8% Senior Notes" means the 10-7/8% Series B senior notes due 2006 and the 10-7/8% Series D senior notes due 2006, issued by KACC pursuant to the 10-7/8% Senior Note Indentures in outstanding principal amounts of $175,000,000 and $50,000,000, respectively

(13)    "Ad Hoc Group" means the ad hoc group of holders of Senior Notes comprised of Trilogy Capital, Caspian Capital Partners, Canyon Partners, Citadel Equity Fund Ltd., Citadel Credit Trading Ltd , Durham Asset Management L L.C , Farallon Capital Management L.L C  and TCM Spectrum Fund L.P.

(14)    "Administrative Claim" means a Claim for costs and expenses of administration allowed under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date in preserving the respective Estates and operating the businesses of the Debtors; (b) Professional Fee Claims; and (c) US Trustee Fees; *provided, however,* except as provided in the Intercompany Claims Settlement, Administrative Claims will not include any Intercompany Claim.

(15)    "Administrative Claim Bar Date" means the date by which all requests for payment of Administrative Claims (other than Professional Fee Claims and US Trustee Fees) are required to be Filed with the Bankruptcy Court.

(16)    "Administrative Claim Bar Date Order" means the order of the Bankruptcy Court establishing the Administrative Claim Bar Date

(17)    "Allowed Claim" means:

(a)    a Claim that (i) has been listed by a particular Debtor on its Schedules as other than disputed, contingent, or unliquidated and (ii) is not otherwise a Disputed Claim;

(b)    a Claim (i) for which a proof of Claim or request for payment of Administrative Claim has been Filed by the applicable Bar Date or otherwise been deemed timely Filed under applicable law and (ii) that is not otherwise a Disputed Claim; or

(c)    a Claim that is allowed:  (i) in any Stipulation of Amount and Nature of Claim executed by the applicable Debtor and Claim holder prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any Stipulation of Amount and Nature of Claim executed by the Distribution Trustee and Claim holder after the Effective Date; (iii) in any contract, instrument or other agreement or document entered into in connection with the Plan prior to the Effective Date and approved by the Bankruptcy Court; (iv) in a Final Order; or (v) pursuant to the terms of the Plan.

(18)    "AJI" means Alpart Jamaica Inc

(19)    "AJI/KJC Plan" means the third amended joint plan of liquidation filed by AJI and KJC on February 25, 2005, as such plan may be amended, modified or supplemented from time to time with the consent of the Creditors' Committee.

(20)    "Australian Tax Claims" means collectively the Allowed Priority Tax Claims and Allowed Administrative Claims of the Government of Australia contemplated by Section 8.11(a), if any

(21)    "Ballot" means the form or forms distributed to each holder of an impaired Claim entitled to vote on the Plan on which the holder indicates acceptance or rejection of the Plan.

(22)    "Bankruptcy Code" means title 11 of the United States Code, 11 U.S C  §§ 101-1130, as now in effect or hereafter amended, as applicable to the Chapter 11 Cases.

(23)    "Bankruptcy Court" means the United States District Court for the District of Delaware having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made pursuant to 28 U.S.C. § 157, the bankruptcy unit of such District Court.

(24)    "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended, as applicable to the Chapter 11 Cases.

(25)    "Bar Date" means the applicable bar date by which a proof of Claim must be or must have been Filed, as established by order of the Bankruptcy Court, including the general Bar Date of January 31, 2003.

(26)    "Bar Date Order" means an order of the Bankruptcy Court establishing Bar Dates for Filing proofs of Claims in the Chapter 11 Cases, as the same may be amended, modified or supplemented, including the order entered October 29, 2002.

(27)    "Beneficiaries" means the creditors and claimants of the Estates.

(28)    "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

(29)    "Cash" means the legal tender of the United States of America.

(30)    "Chapter 11 Cases" has the meaning set forth in the introductory paragraph of the Plan.

(31)    "Claim" means a "claim," as defined in section 101(5) of the Bankruptcy Code, against either Debtor

(32)    "Claims Objection Bar Date" means, for all Claims, other than those Claims allowed in accordance with Sections 1.1(17) and 2.7, the latest of: (a) 120 days after the Effective Date; (b) 60 days after the Filing of a proof of Claim for such Claim; and (c) such other period of limitation for objecting to such Claim as may be specifically fixed by the Plan, the Confirmation Order or a Final Order.

(33)    "Claims Report" means, with respect to each Estate, a report certified by the claims agent for such Estate setting forth: (a) a listing, as of the Effective Date, of: (i) all Allowed Secured Claims of such Estate; (ii) all Allowed Administrative Claims of such Estate; (iii) all Allowed Priority Claims of such Estate; (iv) all Allowed Priority Tax Claims of such Estate; (v) all Allowed Unsecured Claims of such Estate; and (vi) all Disputed Claims of such Estate; and (b) for each Claim so listed (i) the name, address and federal taxpayer identification number or social security number (if known) of the holder thereof as of the Distribution Record Date and (ii) the amount thereof, including the amount of unpaid principal and accrued interest (if known)

(34)    "Class" means a class of Claims or Interests, as described in Article II

(35)    "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021

(36)    "Confirmation Hearing" means the hearing before the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

(37)    "Confirmation Order" means the order or orders of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code

(38)    "Contractual Subordination Disputes" means any or all of the following matters pending in the Kaiser Cases: (i) the 7-3/4% SWD Revenue Bond Dispute; (ii) the motion filed on August 14, 2004, by the Senior Subordinated Note Indenture Trustee to determine the classification of the Senior Subordinated Note Claims under any plan of reorganization filed by the Debtors or the Other Kaiser Debtors that guaranteed the Senior Subordinated

Notes (including the Plan), and (iii) the adversary proceeding filed August 16, 2004, and styled *U.S. Bank National Association v. Kaiser Aluminum & Chemical Corporation*, Adv. Pro. No. 04-55115 (JFK)

(39)    "Creditors' Committee" means the official committee of unsecured creditors of the Debtors and the Other Kaiser Debtors appointed by the US Trustee pursuant to section 1102 of the Bankruptcy Code in the Kaiser Cases, as such appointment has been subsequently modified.

(40)    "Debtors" has the meaning set forth in the introductory paragraph of the Plan.

(41)    "Disbursing Agent" means the Distribution Trustee, in its capacity as a disbursing agent pursuant to the Plan, or any third party acting as disbursing agent at the direction of the Distribution Trustee.

(42)    "Disclosure Statement" means the disclosure statement that relates to the Plan (including all Exhibits), as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as the same may be amended, modified or supplemented.

(43)    "Disputed Claim" means:

(a)    if no proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law:  (i) a Claim that is listed on a Debtor's Schedules as other than disputed, contingent or unliquidated, but as to which the applicable Debtor or the Distribution Trustee, or prior to the Confirmation Date, any other party in interest, has Filed an objection by the Claims Objection Bar Date and such objection has not been withdrawn or denied by a Final Order; or (ii) a Claim that is listed on a Debtor's Schedules as disputed, contingent or unliquidated; or

(b)    if a proof of Claim or proof of Administrative Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law: (i) a Claim for which no corresponding Claim is listed on a Debtor's Schedules; (ii) a Claim for which a corresponding Claim is listed on a Debtor's Schedules as other than disputed, contingent or unliquidated, but the nature or amount of the Claim as asserted in the proof of Claim varies from the nature and amount of such Claim as it is listed on the Schedules; (iii) a Claim for which a corresponding Claim is listed on a Debtor's Schedules as disputed, contingent or unliquidated; or (iv) a Claim for which an objection has been Filed by the applicable Debtor or the Distribution Trustee or, prior to the Confirmation Date, any other party in interest, by the Claims Objection Bar Date, and such objection has not been withdrawn or denied by a Final Order.

(44)    "Disputed Claims Reserves" means, with respect to each of the Trust Accounts, the reserve of Cash (and any other property) retained in such Trust Account to satisfy Disputed Claims against the Estate of KAAC or the Estate of KFC, if, as and when they are allowed, or, to the extent such Disputed Claims are not allowed, to satisfy Claims that are allowed in accordance with the terms of the Plan.

(45)    "Distribution Record Date" means the close of business on the Confirmation Date.

(46)    "Distribution Trust" means the trust established pursuant to the Plan, among other things, to hold the Distribution Trust Assets and make distributions pursuant to the Plan.

(47)    "Distribution Trust Agreement" means the trust agreement, to be dated on or prior to the Effective Date, between the Debtors and the Distribution Trustee, governing the Distribution Trust, which will be substantially in the form of Exhibit A to the Plan.

(48)    "Distribution Trust Assets" means collectively:  (a) the Trust Accounts and any Cash (and any other property) held by such Trust Accounts; (b) the rights of the Debtors under or in respect of the Intercompany Claims Settlement, the QAL Purchase Agreement or any causes of action not released by the Plan, including the