Not Reported in B.R.  
1992 WL 605483 (Bankr.S.D.Ohio)

**(Cite as: 1992 WL 605483 (Bankr.S.D.Ohio))**

Page 18

(XIII) *Merger of Rich's Real Estate Subsidiaries.* Reorganized Goldsmith's Real Estate, Inc., Reorganized Rich's Augusta Mall Real Estate, Inc., Reorganized Rich's Brookwood Village Real Estate, Inc., Reorganized Rich's Columbia Mall Real Estate, Inc., Reorganized Rich's Lenox Square Real Estate, Inc., Reorganized Rich's North DeKalb Real Estate, Inc. and Reorganized Rich's Shannon Mall Real Estate, Inc. (collectively, the "Merging Rich's Real Estate Subsidiaries") shall be merged with and into Reorganized Rich's Real Estate, Inc., the separate corporate existence of the Merging Rich's Real Estate Subsidiaries shall thereupon cease and Reorganized Rich's Real Estate, Inc. shall be the surviving corporation pursuant to the applicable provisions of the Delaware General Corporation Law. Reorganized Rich's Real Estate, Inc. and the Merging Rich's Real Estate Subsidiaries shall take such actions as any of their respective Responsible Officers may determine are necessary or appropriate to effectuate such merger, including the execution and delivery of an appropriate agreement and plan of merger and the making of such filings in connection therewith as may be required under the applicable provisions of the Delaware General Corporation Law.

(XIV) *Merger of Certain Allied Real Estate Subsidiaries.* Reorganized Al-Jordan Realty Corp. and/or Reorganized Seattle Northgate Company shall be merged with and into Reorganized ASGREC, the separate corporate existence of Reorganized Al-Jordan Realty Corp. and/or Reorganized Seattle Northgate Company shall thereupon cease and Reorganized ASGREC shall be the surviving corporation pursuant to the applicable provisions of the Delaware General Corporation Law and, if applicable, the Massachusetts Business Corporation Law. "ASGREC Merger Transactions" shall mean the merger of Reorganized Al-Jordan Realty Corp. and/or Reorganized Seattle Northgate Company with and into Reorganized ASGREC and all transactions necessary or appropriate to consummate such merger. Reorganized ASGREC and Reorganized Seattle Northgate Company shall take such actions as any of their respective Responsible Officers may determine are necessary or appropriate to effectuate the ASGREC Merger Transactions, including the execution and delivery of an appropriate agreement and plan of merger and the making of such filings in connection therewith as may be required under the applicable provisions of the Massachusetts Business Corporation Law and the Delaware General Corporation Law.

(XV) *Dissolution of Certain Subsidiaries*  
*21 (A) Each of Reorganized Allied Mortgage Financing Corp., Reorganized Astoria Realty, Inc., Reorganized Auburndale Realty, Inc., Reorganized Bloomingdale's Third Avenue Real Estate, Inc., Reorganized Douglaston Plaza, Inc., Reorganized Goldsmith's, Inc., Reorganized Hampton Bays Plaza, Inc., Reorganized Jordan Servicenter, Inc., Reorganized Jor-Mar, Reorganized Maas Properties, Inc., Reorganized Plymouth! Real Estate Company and Reorganized Rich's Main Store Real Estate, Inc. (collectively, the "Dissolving Delaware Subsidiaries"), as applicable, shall be, and hereby is, authorized to take such actions as any of its respective Responsible Officers may determine are necessary or appropriate to dissolve and terminate its corporate existence pursuant to section 275 of the Delaware General corporation Law, including the execution and filing of an appropriate certificate of dissolution.

(B) Prior to its dissolution, if applicable, each of the Dissolving Delaware Subsidiaries shall transfer such of its assets, if any, as may be remaining at that time to Federated, Reorganized Federated, Allied, Reorganized Allied, New Federated or a newly formed subsidiary of New Federated, as applicable, to be held in trust for the benefit of the potential claimants of such assets pursuant to Sections VI.A, VI.C.2.a and VII.B of the Plan. Federated, Reorganized Federated, Allied, Reorganized Allied, New Federated or such subsidiary, as applicable, shall be, and hereby is, authorized to liquidate any and all noncash assets so held. The applicable Disbursing Agent shall make the distributions required by the Plan on account of Administrative Claims and Priority Tax Claims against the Dissolving Delaware Subsidiaries and, as appropriate, Allowed Claims in Classes FO-1 through PO-5, AR-1 through AR-4, AR-7, AR-8, AO-1 through AO-4, AO-7, AO-8 or JM-1.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.  
1992 WL 605483 (Bankr.S.D.Ohio)

**(Cite as: 1992 WL 605483 (Bankr.S.D.Ohio))**

Page 19

(ii) *New York Restructuring Transactions*
(I) Reorganized Allied Stores Marketing shall be, and hereby is, authorized to take such actions as any of its Responsible Officers may determine are necessary or appropriate to dissolve and terminate its corporate existence pursuant to section 1001 of the New York Business Corporation Law, including the execution and filing of an appropriate certificate of dissolution.

(II) Prior to its dissolution, if applicable, Reorganized Allied Stores Marketing may transfer such of its assets, if any, as may be remaining at that time to Allied, Reorganized Allied, New Federated or a newly formed subsidiary of New Federated, as applicable, to be held in trust for the benefit of the potential claimants of such assets pursuant to Sections VI.A, VI.C.2.a and VII.B of the Plan. Allied, Reorganized Allied, New Federated or such subsidiary, as applicable, shall be, and hereby is, authorized to liquidate any and all noncash assets so held. The applicable Disbursing Agent shall make the distributions required by the Plan on account of Administrative claims and Priority Tax Claims against Allied Stores Marketing and Allowed Claims in Class ASM-1.

(iii) *Massachusetts Restructuring Transactions*
*22 Reorganized Al-Jordan Realty Corp. shall be, and hereby is, authorized to take such actions as any of its Responsible Officers may determine are necessary or appropriate to effectuate the ASGREC Merger Transactions, including the execution and delivery of an appropriate agreement and plan of merger and the making of such filings in connection therewith as may be required under the applicable provisions of the Massachusetts Business Corporation Law and the Delaware General Corporation Law.

(iv) *Michigan Restructuring Transactions*
(I) Reorganized Retail Service, Inc. shall be, and hereby is, authorized to take such actions as any of its Responsible Officers may determine are necessary or appropriate to dissolve and terminate its corporate existence pursuant to section 801 of the Michigan Business Corporations Act, including the execution and filing of an appropriate certificate of dissolution.

(II) Prior to its dissolution, if applicable, Reorganized Retail Service, Inc. may transfer such of its assets, if any, as may be remaining at that time to Federated, Reorganized Federated, New Federated or a newly formed subsidiary of New Federated, as applicable, to be held in trust for the benefit of the potential claimants of such assets pursuant to Sections VI.A, VI.C.2.a and VII.B of the Plan. Federated, Reorganized Federated, New Federated or such subsidiary, as applicable, shall be, and hereby is, authorized to liquidate any and all noncash assets so held. The applicable Disbursing Agent shall make the distributions required by the Plan on account of Administrative Claims and Priority Tax Claims against Reorganized Retail Service, Inc. and, as appropriate, Allowed Claims in Classes FO-1 through FO-5.

(v) *Other Transactions*

On or after the Effective Date, each of the Reorganized Debtors shall be, and hereby is, authorized to take such other actions as any of their respective Responsible officers may determine are necessary or appropriate in connection with the Restructuring Transactions (including the transactions contemplated by Exhibit IV.B.3 of the Plan), provided only that such actions are consistent with the terms of the Plan, this Confirmation order and, to the extent applicable, the New Debt Instruments and the New Shared Collateral Agreements.

b. Filing of Certificates or Articles of *Incorporation and By-Laws* ph1h(i) *Delaware Filings*

As of the Effective Date, Reorganized Allied Mortgage Financing Corp., Reorganized Allied Credit, Reorganized Allied Credit Holdings, Reorganized Allied Stores Marketing Corporation, Reorganized Astoria Realty, Inc., Reorganized Auburndale Realty, Inc., Reorganized BFC Real Estate Company, Reorganized Douglaston Plaza, Inc., Reorganized Federated Acceptance Corporation, Reorganized Federated Real Estate,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.  Page 20
1992 WL 605483 (Bankr.S.D.Ohio)

**(Cite as: 1992 WL 605483 (Bankr.S.D.Ohio))**

Inc., Reorganized Federated Stores Realty, Inc., Reorganized Jordan Servicenter, Inc., Reorganized Jor-Mar and Reorganized Rich's Main Store Real Estate, Inc. (collectively, the "Reorganized Delaware Subsidiaries") shall be, and hereby are, authorized and directed to amend and restate their respective certificates of incorporation and by-laws (I) substantially in the form of Exhibits IV.C.1.b(i) and IV.C.1.b(ii), respectively, to the Plan and (II) in particular, to prohibit the issuance of nonvoting equity securities to the extent set forth in such Exhibits and required by section 1123(a) of the Bankruptcy Code; *provided,* however, that any Reorganized Delaware Subsidiary that is to be dissolved pursuant to Section III.D.1.a(i)(XV) of this Confirmation Order shall not be required to comply with this Section III.D.1.b(i).

(ii) *New York Filings*

*23 As of the Effective Date, Reorganized Allied Stores International, Inc., Reorganized Allied Stores International Sales Company, Inc., Reorganized Allied Stores Marketing and Reorganized Bloomingdale's By Mail Ltd. shall be, and hereby are, authorized and directed to amend their respective articles of incorporation to prohibit the issuance of nonvoting equity securities to the extent required by section 1123(a) of the Bankruptcy Code ; *provided,* however, that Reorganized Allied Stores Marketing shall not be required to effectuate any such amendment if it is to be dissolved pursuant to Section III.D.1a(ii) of this Confirmation Order. ph1h(iii) *Washington Filings*

As of the Effective Date, Reorganized Tukwila Warehousing Services Corporation shall be, and hereby is, authorized and directed to amend its articles of incorporation to prohibit the issuance of nonvoting equity securities to the extent required by section 1123(a) of the Bankruptcy Code.

(iv) *Florida Filings*

As of the Effective Date, Reorganized Saramaas Realty Corp., Reorganized 22 East Advertising Agency, Inc. and Reorganized 22 East Realty Corporation shall be, and hereby are, authorized and directed to amend their respective articles of incorporation to prohibit the issuance of nonvoting equity securities to the extent required by section 1123(a) of the Bankruptcy Code.

The amendments and restatements of certificates or articles of incorporation and by-laws described in this Section III.D.1b shall be collectively referred to herein as the "Amendments and Restatements."

c. *Implementation of the Restructuring Transactions and the Amendments and Restatements*

(i) Pursuant to section 1142(b) of the Bankruptcy Code, the State Reorganization Effectuation Statutes, as applicable, and other appropriate provisions of applicable state business corporation laws, the appropriate Debtors or Reorganized Debtors, including New Federated, shall be, and hereby are, authorized to effectuate the Restructuring Transactions and the Amendments and Restatements, to otherwise effectuate the Plan, the transactions contemplated by the Plan and this Confirmation order, and to take any proceedings or actions provided for or contemplated by the Plan or this Confirmation Order, all without further action by their respective directors or stockholders, and with like effect as if such actions had been taken by unanimous action of the respective directors and stockholders of the appropriate Debtor or Reorganized Debtor.

(ii) Without limiting the generality or effect of Section III.D.1c(i) of this Confirmation Order, pursuant to section 1142(b) of the Bankruptcy Code , the State Reorganization Effectuation Statutes, as applicable, and other appropriate provisions of applicable state business corporation laws, the appropriate Debtors or Reorganized Debtors, including New Federated, shall be, and hereby are, authorized to (I) cause to be filed with the Secretary of State or other applicable state or local official: (A) any and all certificates, agreements or plans of merger, consolidation, dissolution, liquidation or amendment necessary or appropriate to effectuate the applicable Restructuring Transactions (collectively, the "Filed Restructuring Instruments") and (B) amended and restated certificates or articles of incorporation and by-laws or certificates or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.  
1992 WL 605483 (Bankr.S.D.Ohio)

**(Cite as: 1992 WL 605483 (Bankr.S.D.Ohio))**

Page 21

articles of amendment, as applicable, reflecting the Amendments and Restatements (collectively, the "Amended and Restated Certificates"); and (II) take or cause to be taken all such other actions, including the making of appropriate filings or recordings, as may be required under appropriate provisions of applicable state business corporation laws or any other applicable law, or as any of the Responsible Officers of the appropriate Debtors or Reorganized Debtors may determine are necessary or appropriate, in connection with the Restructuring Transactions and the Amendments and Restatements. After the Effective Date, each Reorganized Debtor identified in Section III.D.1b of this Confirmation Order that makes an Amendment and Restatement shall be, and hereby is, authorized to amend or restate its certificate or articles of incorporation, by-laws or other similar constituent documents as permitted by appropriate provisions of applicable state business corporation laws and such certificate, articles, by-laws or other similar constituent documents.

*24 (iii) Each of the Responsible Officers and any Assistant Secretary of each Debtor or Reorganized Debtor, including New Federated, shall be, and hereby is, authorized to execute, deliver, file and have recorded the applicable Filed Restructuring Instruments or Amended and Restated Certificates, and to take such other actions on behalf of such Debtor or Reorganized Debtor as such person may determine to be required under appropriate provisions of applicable state business corporation laws or any other applicable law in connection with the Restructuring Transactions or the Amendments and Restatements, and, without limiting the generality or effect of the foregoing, the Secretary or any Assistant Secretary of each such Debtor or Reorganized Debtor shall be, and hereby is, authorized to certify or attest to any of the foregoing actions. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person so to act.

(iv) Except as may be provided in a notice filed by New Federated not later than 30 calendar days after the Effective Date (the "Plan Closing Memorandum") or as may otherwise be provided in any Filed Restructuring Instrument or Amended and Restated Certificate relating to a particular Restructuring Transaction or Amendment and Restatement, each Restructuring Transaction and Amendment and Restatement shall be, and hereby is, deemed effective immediately upon the filing of the appropriate Filed Restructuring Instruments and/or Amended and Restated Certificates with the Secretary of State or other applicable state official, all as provided in this Section III.D.1; *provided, however,* that, except as may otherwise be provided in the Plan Closing Memorandum, the Restructuring Transactions, if any, as to which such filings are not required shall be, and hereby are, deemed effective as of the effective dates respectively set forth in the applicable implementing documentation.

2. *Directors and Officers; Employment-Related Agreements and Compensation Programs* ph1h a. *Directors and Officers of the Reorganized Debtors*

(i) *New Federated*

(I) The appointment of such of the nine persons identified in the Disclosure Statement as the initial directors of New Federated who continue to be willing to serve as the initial directors of New Federated shall be, and hereby is, approved. In addition, the appointment of the officers of Federated immediately prior to the Effective Date as the initial officers of New Federated as of and immediately following the Effective Date, all in the same offices with New Federated as such officers held with Federated immediately prior to the Effective Date, shall be, and hereby is, approved.

(II) New Federated shall be, and hereby is, authorized and directed to complete its search for the Additional Directors (the "New Director Search Process"), as contemplated by this Court's Order Authorizing Debtors to Employ SpencerStuart and Associates, Inc., dated November 25, 1991 (Bankruptcy Court Doc. No. 6702), as soon as practicable after the Confirmation Date. The chairpersons of each of the Creditors' Committees and the sole 5% Holder (as such term is defined in the Stock Transfer Provisions, which is in turn

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

defined in Section III.D.3.b of this Confirmation Order) (collectively, the "Participating Chairpersons") may, but shall not be obligated to, participate in the New Director Search Process after the Effective Date, notwithstanding the dissolution of the Creditors' Committees pursuant to the Plan, and New Federated shall be, and hereby is, authorized and directed to reimburse the Participating Chairpersons for all actual, necessary, reasonable and documented out-of-pocket expenses, including the reasonable professional fees of one law firm retained to represent all Participating Chairpersons, incurred in connection with the New Director Search Process and until such time as the Additional Directors are elected to the New Federated Board of Directors.

*25 (III) The Participating chairpersons shall be, and hereby are, authorized to seek appropriate relief in this Court in the event that any disputes arise regarding the New Director Search Process; and this Court shall retain jurisdiction over the Reorganization Cases after the Effective Date to enter any such order, process, judgment or decree as may be necessary or appropriate to resolve any such disputes.

(ii) *The Reorganized Debtors Other than New Federated.* As of the Effective Date, the appointment of the respective officers and directors of each Debtor other than Federated and Allied immediately prior to the Effective Date as the initial officers and directors of the Reorganized Debtors other than New Federated as of and immediately following the Effective Date, all (with respect to such officers) in the same offices as such officers held with the applicable Debtor immediately prior to the Effective Date, shall be, and hereby is, approved.

(iii) *Terms, Successors, Etc.* All persons serving as officers or directors of New Federated or any other Reorganized Debtor shall serve in the capacities in which they are to serve as of immediately following the Effective Date until their successors are duly elected or appointed and qualified in accordance with the terms of the applicable certificate or articles of incorporation, by-laws or regulations or other similar constituent documents and applicable law, or until the earlier of the death or removal of any such director or officer.

b. Approval of New Employment, Retirement, Indemnification and Other Agreements and *Incentive Compensation Programs*

Pursuant to section 1142(b) of the Bankruptcy Code, the State Reorganization Effectuation Statutes, as applicable, and other appropriate provisions of applicable state business corporation laws, without further action by the Court or the stockholders or (except as otherwise provided herein) board of directors of any Reorganized Debtor, and without limiting the power or authority of any Reorganized Debtor following the Effective Date to take any and all such actions as may be permitted or required by applicable nonbankruptcy law, (I) New Federated shall be, and hereby is, authorized to adopt the Equity Plan and the New Bonus Plan; (II) New Federated shall be, and hereby is, authorized to enter into (A) a D & O Indemnity Agreement, substantially in the form set forth in Exhibit IV.C.3(a) to the Plan or with such changes and modifications thereto as may from time to time be approved by the New Federated Board of Directors or a committee thereof, with each director and officer of New Federated and such other persons, if any, as may be determined by the New Federated Board of Directors or a designated committee thereof (either specifically or by delegation to or authorization of any of the Chairman, Vice Chairman, President or any Executive Vice President of New Federated) and (B) a Change-in-Control Agreement, substantially in the form set forth in Exhibit IV.C.3(a) to the Plan or with such changes and modifications thereto as may from time to time be approved by the New Federated Board of Directors or a committee thereof, with such officers of New Federated as may be determined by the Chairman of New Federated (who himself shall not be eligible to enter into a Change-in-Control Agreement without action by the New Federated Board of Directors or a committee thereof) and such other persons, if any, as may be determined by the New Federated Board of Directors or a committee thereof (either specifically

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.
1992 WL 605483 (Bankr.S.D.Ohio)

Page 23

**(Cite as: 1992 WL 605483 (Bankr.S.D.Ohio))**

or by delegation or authorization as aforesaid); (III) New Federated and the applicable Reorganized Debtors shall be, and hereby are, authorized to adopt the Supplementary Executive Retirement Plan for New Federated and Certain of its Subsidiaries, substantially on the terms set forth in Exhibit III.D.2.b attached hereto and incorporated herein by reference, with such changes or modifications thereto as may from time to time be approved by the New Federated Board of Directors or a committee thereof (either specifically or by delegation or authorization as aforesaid); and (IV) without limiting the generality or effect of any of the foregoing, the Reorganized Debtors shall be, and hereby are, authorized to enter into or modify employment, retirement, severance, change-in-control, indemnification and other agreements with their active directors, officers and employees, and to implement or modify retirement income plans, welfare benefit plans and other plans for active employees and take any and all such other actions as may be necessary or appropriate to perform and effectuate such agreements and plans and otherwise make available the benefits contemplated by such agreements and plans. The forms of such of the foregoing agreements and plans as have previously been filed with the Court shall be, and hereby are, approved, and each of the foregoing actions shall be, and hereby is, deemed undertaken and approved without further action by the respective directors or stockholders of the Reorganized Debtors, and with like effect as if such actions had been taken by unanimous action of the respective directors and stockholders of the appropriate Reorganized Debtors.

3. *Approval of Agreements and Indentures Related to New Debt and New Equity; Executory Contracts; Distributions*

*26 a. Pursuant to section 1142(b) of the Bankruptcy Code and section 303 of the Delaware General Corporation Law, on or after the Effective Time of the Federated/Allied Combination Transactions, New Federated shall be, and hereby is, authorized and directed to execute, deliver and perform its obligations under the New Debt, the New Debt Instruments, the New Shared Collateral Agreements, the A/B Mortgages and Assignments (as such term is defined in the New Shared Collateral Agreements), the New Warrants Agreements and the New Federated Share Purchase Rights Agreement, and to take all such other actions and execute, deliver, record and file all such other agreements, instruments and other documents as any of its Responsible officers may determine are necessary or appropriate in connection with the issuance and distribution of New Debt, New Equity and New Federated Share Purchase Rights under the Plan (collectively, the "New Debt and Equity Documentation"), including the making of such filings of the Certificate of Designation of Series A Junior Participating Preferred Stock of New Federated, substantially in the form set forth in Exhibit I.A.194 to the Plan, as may be required under applicable provisions of the Delaware General Corporation Law, all without further action by its directors or stockholders, and with like effect as if such actions had been taken by unanimous action of the directors and stockholders of New Federated. The New Debt, the New Debt Instruments, the New Shared Collateral Agreements, the New Warrants Agreements and the New Federated Share Purchase Rights Agreement, as in effect on the Effective Date, shall be substantially in the respective forms thereof filed as Exhibits to the Plan, with such changes and modifications thereto as may be approved by the officer of New Federated executing the same on behalf of New Federated; *provided, however,* that any such change that would have a material, adverse effect upon the entities or individuals to receive notes or rights under the agreement or instrument to be changed will not be effective unless notice of such proposed change shall have been filed not later than two business days prior to the Effective Date or such change shall have been approved by the Creditors' Committee representing the Claim holders who are to receive such notes or rights pursuant to the Plan. New Federated shall be, and hereby is, deemed to have guaranteed the obligations of the Subsidiary Trade Obligors (as such term is defined in the Disclosure Statement) on a subordinated basis, as contemplated by the Plan and the Disclosure Statement. Without limiting the generality or effect of the foregoing, after the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.     Page 24
1992 WL 605483 (Bankr.S.D.Ohio)

**(Cite as: 1992 WL 605483 (Bankr.S.D.Ohio))**

Effective Date, New Federated may, but shall not be obligated to, execute and deliver the New Federated Share Purchase Rights Agreement pursuant to the authorization thereof by the New Federated Board of Directors in accordance with the applicable provisions of the Delaware General Corporation Law, and, pursuant to this Confirmation Order and such authorization, take all such other actions, and file all such other agreements, instruments and other documents, as may be contemplated thereby.

*27 b. The executory contract and unexpired lease provisions of Article V of the Plan and the distribution provisions of Article VI of the Plan shall be, and hereby are, specifically approved. Pursuant to section 1142(b) of the Bankruptcy Code , each holder of an Allowed Claim in Classes F-5 and FR-5 shall be, and hereby is, directed to execute and deliver the New Debt Instruments, as applicable, and to take all such other actions and execute, deliver and record and file all such other New Debt and Equity Documentation as may be necessary or appropriate in connection with the transactions contemplated by the Plan. In addition, also pursuant to section 1142(b) of the Bankruptcy Code, as a condition precedent to a holder of an Allowed Claim receiving a distribution of New Debt or New Equity pursuant to the Plan, (i) if such holder is a holder of a Claim in Class F-5, FR-4, A-5, AR-5 or AO-5, such holder shall have executed and delivered to the Reorganized Debtors the applicable agreements or indentures governing the particular issue of New Debt or New Equity to be distributed (any holder of a Claim in any such Class that does not so execute such agreements or indentures shall not be entitled to receive payment of any facility fees under any such agreements or indentures, notwithstanding the terms thereof) and (ii) if such holder is a holder of any Claim evidenced by Debt Securities, such holder shall be required to surrender any note or other evidence of such holder's Claim pursuant to a letter of transmittal furnished by New Federated (the "Letter of Transmittal"). The Letter of Transmittal shall include, among other provisions, customary provisions with respect to the authority of the Claim holder to act, the authenticity of any signatures required thereon and, if the Claim holder is to receive shares of New Common Stock pursuant to the Plan, the acknowledgment and agreement of such Claim holder (if not a Small Holder) to the Agreement and Provisions Relating to Restrictions on Transfer of Certain Shares of Common Stock of Federated Department Stores, Inc., substantially in the form set forth in Exhibit I.A.195 to the Plan (the "Stock Transfer Provisions"). The Stock Transfer Provisions shall be, and hereby are, approved as legal, valid and binding restrictions on the transfer of shares of New Common Stock pursuant to and in accordance with Sections 202 and 303 of the Delaware General Corporation Law, subject to the limitations set forth therein. For purposes of the Stock Transfer Provisions, a person shall be deemed a "Small Holder" if such person would be the beneficial owner of 2,000 or fewer shares of New Common Stock pursuant to the Plan. On the terms and subject to the conditions set forth in the Stock Transfer Provisions, including the provisions therein relating to release, waiver and termination, New Federated and each Holder (as such term is defined in the Stock Transfer Provisions) shall be, and hereby are, deemed to have agreed to be bound by the Stock Transfer Provisions with the same force and effect as though New Federated and each Holder had duly executed and delivered, after due authorization, an agreement containing all of the provisions set forth in the Stock Transfer Provisions. The Stock Transfer Provisions shall be, and hereby are, deemed legal, valid and binding upon and enforceable by New Federated or any Holder in accordance with their terms. The Committee Designee Designators and sole 5% Holder (as such terms are defined in the Stock Transfer Provisions) shall be Fidelity Investments, Paine Webber Funding, Inc., Metropolitan Life Insurance Company, Citibank, N.A. and First Boston Securities Corporation, or their respective designees specified in writing to the Reorganized Debtors.

*28 c. On December 30, 1991, the Debtors filed their Motion for Order Directing Disclosure of Holders of Public Debt Securities and Use of Master Exchange Agent (the "Master Exchange Agent Motion") (Bankruptcy Court Doc. No. 7177). The relief requested in the Master Exchange Agent

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Motion shall be, and hereby is, granted. Accordingly, pursuant to section 1142(b) of the Bankruptcy Code and Bankruptcy Rules 1007(i) and 3020(d): (i) the Indenture Trustees are directed to disclose to the Debtors the list of registered holders of Prepetition Debt Securities (as such term is defined in the Master Exchange Agent Motion), including a list of Depositories (as such term is defined in the Master Exchange Agent Motion), and the Depositories are directed to disclose to the Debtors the list of Participants (as such term is defined in the Master Exchange Agent Motion), as required in the ordinary course of business between and among the Debtors, the Indenture Trustees and the Depositories; (ii) all Participants are directed to disclose to the Debtors the Beneficial Owner Information (as such term is defined in the Master Exchange Agent Motion) as soon as practicable, but in no event later than five calendar days after the Effective Date; (iii) the Debtors are authorized to use the Master Exchange Agent (as such term is defined in the Master Exchange Agent Motion) to perform all of the functions that were to be performed by the Distribution Trustees (as such term is defined in the Master Exchange Agent Motion), except for Morgan Guaranty Trust Company of New York, with respect to distributions of New Debt or New Equity under the Plan-*provided, however,* that, notwithstanding any contrary provision in any Debt Securities Indenture, in performing such functions (which, subject to the provisions of this Confirmation order, will be governed by Section VI.C.2.a of the Plan rather than Section VI.C.2.b of the Plan), the Master Exchange Agent may adopt such procedures with respect thereto that are not inconsistent with the Plan or this Confirmation order as the Master Exchange Agent and any of the Responsible Officers of New Federated may determine are necessary or appropriate; and (iv) the Distribution Trustees, except for Morgan Guaranty Trust Company of New York, are excused from taking any actions with respect to distributions under the Plan.

d. The form of Notice attached hereto as Exhibit IV.D.3.d and incorporated herein by reference, which Notice provides instructions to the Indenture Trustees, the Depositories and the Participants of their obligations under this Confirmation Order, shall be, and hereby is, approved, and the Debtors shall be, and hereby are, authorized and directed to transmit such Notice to the Indenture Trustees, the Depositories and the Participants as soon as practicable after they have determined on what date the Effective Date is likely to occur.

e. As a condition precedent to receiving any distribution pursuant to the Plan on account of an Allowed Claim evidenced by the instruments, securities or other documentation canceled pursuant to Section IV.L of the Plan, the holder of such Allowed Claim shall tender the applicable instruments, securities or other documentation evidencing such Allowed Claim to the applicable Disbursing Agent or the Master Exchange Agent or shall otherwise comply with the provisions of section VI.H of the Plan.

*29 f. From and after the close of business on the Distribution Record Date, the transfer of any Debt Security (other than a Federated IRB, Allied IRB, Federated 10-1/8% Euronote or Federated 11% Euronote) or any interest therein, including the beneficial ownership thereof, shall be, and hereby is, permanently enjoined and prohibited. As of the close of business on the Distribution Record Date, the respective transfer register for each of the Debt Securities (other than the Federated IRBS, the Allied IRBS, the Federated 10- 1/8% Euronotes and the Federated 11% Euronotes), as maintained by the Debtors, the Indenture Trustees or their respective agents, shall be closed. The Participants, the Depositories, the Master Exchange Agent, the Disbursing Agents, the applicable Indenture Trustees and their respective agents, as appropriate, shall not be required to recognize the purported transfer of any Debt Securities (other than the Federated IRBS, the Allied IRBS, the Federated 10-1/8% Euronotes and the Federated 11% Euronotes) or any interest therein, including the beneficial ownership thereof, occurring after the Distribution Record Date. With respect to transfers of Federated IRBS, Allied IRBS, Federated 10-1/8% Euronotes and Federated 11% Euronotes, which are substantially held in bearer form, the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Master Exchange Agent and the applicable Indenture Trustees, as appropriate, shall recognize such transfers and make distributions pursuant to the Plan in accordance with the Federated IRB Indenture, the Allied IRB Trust Agreement, the Federated 10-1/8% Euronotes Indenture and the Federated 11% Euronotes Indenture, respectively.

4. *Modification of the Allied-Prudential Real Estate Loan Agreement and Related Guaranty*

As permitted under Section III.C.1.c of the Plan, as of the Effective Date, Reorganized Allied, Reorganized ASGREC, Reorganized Al-Jordan Realty Corp., Reorganized Jordan Servicenter, Inc., Reorganized Saramaas Realty Corp., Reorganized Seattle Northgate Company and Prudential may enter into certain modifications or modifications and restatements of the Allied-Prudential Real Estate Loan Agreement and the Allied-Prudential Real Estate Loan Agreement Guaranty (the "Prudential Modifications"), pursuant to documentation reflecting the provisions of the Term Sheet for Modification of Prudential Loan Agreement appended to the letter from Ronald Tysoe to David Stewart, The Prudential Mortgage Capital Company, dated December 20, 1991, a copy of which is attached hereto as Exhibit III.D.4 and incorporated herein by reference. Pursuant to sections 1123(a) and 1142(b) of the Bankruptcy Code, the State Reorganization Effectuation Statutes, as applicable, and other appropriate provisions of applicable state business corporation laws, Reorganized Allied and the appropriate Reorganized Allied Real Estate Subsidiaries shall be, and hereby are, authorized to execute, deliver and perform their respective obligations under the Prudential Modifications and to take such other actions and execute, deliver, record and file all such other agreements, instruments and other documents as any of their respective Responsible officers may determine are necessary or appropriate in connection with the Prudential Modifications, all without further action by their respective directors or stockholders, and with like effect as if such actions had been taken by unanimous action of the respective directors and stockholders of the appropriate Reorganized Allied Debtors. If the Prudential Modifications are not executed and delivered by all parties thereto by the Effective Date, Prudential shall be, and hereby is, authorized to assert its Claims, as described in Claim Nos. 21582 through 21587 filed in the Reorganization Cases (collectively, the "Prudential Claims"), and the applicable Reorganized Allied Debtors shall be, and hereby are, authorized to assert their respective objections to the Prudential Claims no later than 60 calendar days after the Effective Date as if such objections had been timely asserted and filed on or before the Effective Date.

5. *Execution of the Comprehensive Settlement Agreement*

a. *Execution of the Comprehensive Settlement Agreement and Related Documents*

*30 On the Effective Date, pursuant to section 1142(b) of the Bankruptcy Code and the State Reorganization Effectuation Statutes, as applicable, the appropriate Reorganized Debtors shall be, and hereby are, authorized to deliver the executed releases and other documents, if any, provided for under the Comprehensive Settlement Agreement and otherwise perform their respective obligations under the Comprehensive Settlement Agreement, all without further action by their respective directors or stockholders, and with like effect as if such actions had been taken by unanimous action of the respective directors and stockholders of the appropriate Reorganized Debtors.

b. *Release*

As of the Effective Date, each entity receiving New Debt or New Equity pursuant to the Plan shall be deemed to have released each party to the Comprehensive Settlement Agreement, each Consenting Additional Party and their respective present and former directors, officers, employees, agents, attorneys, accountants, investment bankers and representatives from any and all claims arising out of or related to the Subject Transactions and Matters, and such release shall be, and hereby is, deemed valid, effective and binding to the fullest extent permitted under applicable law.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.              Page 27
1992 WL 605483 (Bankr.S.D.Ohio)
**(Cite as: 1992 WL 605483 (Bankr.S.D.Ohio))**

6. *Approval of Other Agreements Related to Implementation of the Plan*

As of the Effective Date, pursuant to section 1142(b) of the Bankruptcy Code and the State Reorganization Effectuation Statutes, as applicable, the appropriate Reorganized Debtors shall be, and hereby are, authorized to execute, deliver and perform their respective obligations under the following agreements (collectively, the "Other Implementation Agreements"): (a) the Liberty Mutual Reinstatement Agreement; (b) the New Tax Sharing Agreement; (c) the New Indemnity Agreement; (d) the Ralphs Registration Rights Agreement; and (e) the New Administrative Services Agreement, and to take all such other actions and execute, deliver, record and file all such other agreements, instruments and other documents as any of their respective Responsible Officers may determine are necessary or appropriate in connection with the Other Implementation Agreements, all without further action by their respective directors or stockholders, and with like effect as if such actions had been taken by unanimous action of the directors and stockholders of the appropriate Reorganized Debtors. The New Tax Sharing Agreement, the New Indemnity Agreement, the Ralphs Registration Rights Agreement and the New Administrative Services Agreement, as in effect on the Effective Date, shall be substantially in the respective forms thereof filed as Exhibits to the Plan, with such modifications thereto as may be approved by the officer of the Debtor or Reorganized Debtor executing the same on behalf of such Debtor or Reorganized Debtor.

7. *Effect of Implementation of Plan on Existing Employment Agreements*

The consummation of the Plan shall be, and hereby is, deemed not to constitute a change of ownership or change in control, as such terms are defined in any employment, severance or termination agreement in effect on the Effective Date and to which any Debtor is a party.

8. *Approval of Amendment to Allied Postpetition Credit Agreement*

**\*31** Pursuant to section 1142(b) of the Bankruptcy Code and section 303 of the Delaware General Corporation law, Allied or Reorganized Allied, as appropriate, shall be, and hereby is, authorized to execute and deliver an amendment to the Allied Postpetition Credit Agreement, which amendment shall extend the term of the Allied Postpetition Credit Agreement from the Confirmation Date through and including the Effective Date. Allied or Reorganized Allied, as appropriate, shall be, and hereby is, authorized to execute and deliver such amendment without further action by its directors or stockholders, and with like effect as if such actions had been taken by unanimous action of the respective directors and stockholders of Allied or Reorganized Allied, as appropriate.

9. *Approval of Amendment to Allied Credit Postpetition Receivables Agreement*

Pursuant to section 1142(b) of the Bankruptcy Code and section 303 of the Delaware General Corporation Law, Allied Credit or Reorganized Allied Credit, as appropriate, shall be, and hereby is, authorized to execute and deliver an amendment to the Allied Credit Postpetition Receivables Agreement, which amendment shall evidence the parties' agreement and acknowledgment that the Commitment Termination Date (as such term is defined in the Allied Credit Postpetition Receivables Agreement) did not occur as a result of Confirmation. Such amendment shall also reduce the aggregate amount available to be borrowed by Allied Credit or Reorganized Allied Credit, as appropriate, under the Allied Credit Postpetition Receivables Agreement, and make certain other technical changes to the Allied Credit Postpetition Receivables Agreement and to certain related agreements, as necessitated by the Restructuring Transactions. Allied Credit or Reorganized Allied Credit, as appropriate, shall be, and hereby is, authorized to execute and deliver such amendment, pay necessary and appropriate fees, if any, and execute and deliver any guaranty, pledge agreement or other agreement necessary or appropriate in connection with the foregoing amendment, all without further action by its directors or stockholders, and with like effect as if such actions

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                            Page 28
1992 WL 605483 (Bankr.S.D.Ohio)

**(Cite as: 1992 WL 605483 (Bankr.S.D.Ohio))**

had been taken by unanimous action of the directors and stockholders of Allied Credit or Reorganized Allied Credit, as appropriate. The credit facility evidenced by the Allied Credit Postpetition Receivables Agreement and all related agreements and other documents shall continue on and after the Effective Date without further order of this Court.

10. *Approval of Amendment to Federated Credit Receivables Purchase Agreement*

Pursuant to section 1142(b) of the Bankruptcy Code and section 303 of the Delaware General Corporation Law, Federated, Reorganized Federated or New Federated, as appropriate, and the Federated Operating Subsidiaries, other than Bloomingdale's By Mail Ltd. (the "Federated Receivables Sellers"), or the Reorganized Federated Receivables Sellers, as appropriate, shall be, and hereby are, authorized to (a) amend in certain technical respects, as necessitated by the Restructuring Transactions, the Receivables Purchase Agreement, dated September 28, 1990, by and among Federated, the Federated Receivables Sellers and Federated Credit, as amended by the First Amendment to Receivables Purchase Agreement, dated October 2, 1991 (the "First Amendment"), and by the Second Amendment to Receivables Credit Agreement, dated November 22, 1991 (the "Second Amendment") (the First Amendment and the Second Amendment being hereby deemed in all respects to be valid and binding obligations of each of the Federated Receivables Sellers that are party thereto and enforceable against such Federated Receivables Sellers in accordance with the terms of such amendments, and the provisions of each of the First Amendment and the Second Amendment being hereby confirmed in all respects), and (b) take all such other actions as any of their respective Responsible Officers may determine are necessary or appropriate to continue the receivables credit facility evidenced by the Receivables-Backed Credit Agreement, dated November 13, 1990, by and among Federated Credit, Pine Hill Funding Corporation and General Electric Capital Corporation, as agent, all without further action by their respective directors or stockholders, and with like effect as if such actions had been taken by unanimous action of the respective directors and stockholders of Federated, Reorganized Federated or New Federated and the Federated Receivables Sellers or the Reorganized Federated Receivables Sellers, as appropriate. The provisions of this Court's Order Authorizing Debtors to Enter into New Receivables Purchase Agreement and to Sell Their Accounts Receivable Pursuant to New Receivables Purchase Agreement Pursuant to 11 U.S.C. § 363(b), dated November 21, 1990 (Bankruptcy Court Doc. No. 2266), shall continue in full force and effect in all respects on and after the Effective Date, and shall apply to the Receivables Purchase Agreement, as amended by the First Amendment and the Second Amendment and as such Receivables Purchase Agreement may be further amended from time to time as provided by this Section III.D.10.

11. *Funding of Disputed Claims Reserves and Certain Accounts*

**\*32** As of the Effective Date, pursuant to Section VII.B.2 of the Plan and section 1142(b) of the Bankruptcy Code, the applicable Reorganized Debtors shall be, and hereby are, authorized and directed to fund (a) their respective Disputed Claims Reserves for Classes F-11, FR-6, FO-4, A-12, AC-4, AR-7, AO-7 and ASM-1, as applicable, on the basis of the aggregate Claims estimates set forth in the Disclosure Statement at pages 15, 16, 22, 23 and 26; and (b) certain concentration, cash collateral and investment accounts, on the terms and conditions and at the times provided for in the Account Collateral Pledge Agreement, substantially in the form set forth in Exhibit I.A.217 to the Plan. The security interest and pledge granted pursuant to the Account Collateral Pledge Agreement shall become effective upon the execution thereof and the funding of the cash collateral and concentration accounts. In accordance with applicable law, the Account Collateral Pledge Agreement creates a valid security interest in and pledge of the Accounts (as such term is defined in the Account Collateral Pledge Agreement) in favor of the Cash Collateral Agent (as such term is defined in the Account

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.    Page 29
1992 WL 605483 (Bankr.S.D.Ohio)

**(Cite as: 1992 WL 605483 (Bankr.S.D.Ohio))**

Collateral Pledge Agreement) and such security interest and pledge will be and remain perfected so long as such Accounts are established and maintained in the manner described in the Account Collateral Pledge Agreement.

12. *Appointment of Claims Resolution Committee*

On the Effective Date, pursuant to designations by the Official Committee of Unsecured Creditors of the Federated Debtors and the Official Unsecured Creditors' Committee of Allied under Section XII.A.3 of the Plan, the following entities shall be, and hereby are, appointed to serve as members of the Claims Resolution Committee:
  a. The CIT Group/Factoring;
  b. Polo Ralph Lauren corporation;
  c. BNY Financial Co.; and
  d. Crystal Brands, Inc.
The Claims Resolution Committee shall have such rights, duties and obligations as are described in Section XII.A.3 of the Plan.

13. *Distributions to Holders of Tort, Personal Injury or Public Liability Claims*

Notwithstanding any contrary provision of applicable nonbankruptcy law, including applicable nonbankruptcy law providing for the attachment of attorneys' liens to judgments in, or settlements of, tort, personal injury or public liability actions, the appropriate Reorganized Debtors shall be, and hereby are, authorized and directed to make distributions under the Plan on account of any Allowed Claims arising out of or related to final judgments in, or settlements of, tort, personal injury or public liability actions, directly to the holders of such Allowed Claims, rather than to any attorneys or other representatives of such holders, without incurring any liability whatsoever to any such attorneys or other representatives on account of such manner of distribution. In addition, the appropriate Reorganized Debtors shall be, and hereby are, authorized to designate Liberty Mutual, American Motorists Insurance Company and/or any of their respective affiliates as Disbursing Agents, as contemplated by Article VI of the Plan, for the purpose of making distributions under the Plan on account of any Allowed Claims arising out of or related to final judgments in, or settlements of, tort, personal injury or public liability actions.

14. *Payment of Fees and Reimbursement of Costs and Expenses of Indenture Trustees*

\*33 On or after the Effective Date, Federated, Allied, Reorganized Federated, Reorganized Allied and New Federated, as appropriate, shall be, and hereby are, authorized and directed to reimburse each of the Indenture Trustees for its respective Allowed Claims, if any, for reimbursement of all of its accrued and unpaid fees, costs or disbursements, including legal fees, allowable under the applicable Debt Securities Indenture.

E. *ADDITIONAL ACTIONS IN FURTHERANCE OF THE PLAN*

The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of any Debtor or Reorganized Debtor to take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, this Confirmation Order and the respective transactions contemplated thereby. Without limiting the generality or effect of any other provision of this Confirmation Order, the appropriate Debtors and Reorganized Debtors shall be, and hereby are, specifically authorized and empowered to take any and all such actions as any of their respective Responsible Officers may determine are necessary or appropriate to implement, effectuate and-consummate the Plan, this Confirmation Order and the transactions respectively contemplated thereby and hereby, all in accordance with the terms of the Plan and this Confirmation Order. Each of the Responsible Officers of each Debtor and Reorganized Debtor shall be, and hereby is, authorized to execute, deliver, file or record such contracts, instruments, releases, indentures, mortgages, deeds, assignments, leases or other agreements or documents and take such other actions as such Responsible Officer may determine are necessary or appropriate to effectuate and further evidence the terms and conditions of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plan, this Confirmation Order and the transactions respectively contemplated thereby and hereby, all without further application to or order of this Court and whether or not such actions or documents are specifically referred to in the Plan, the Disclosure Statement, the Disclosure Statement Order, this Confirmation Order or the Exhibits to any of the foregoing, and the Secretary or any Assistant Secretary of each such Debtor or Reorganized Debtor shall be, and hereby is, authorized to certify or attest to any of the foregoing actions. To the extent that, under applicable nonbankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the directors or stockholders of any Debtor or Reorganized Debtor, this Confirmation Order shall constitute such consent or approval, and such actions shall be, and hereby are, deemed to have been taken by unanimous action of the directors and stockholders of the appropriate Debtor or Reorganized Debtor.

F. *MATTERS RELATING TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES*

1. *Assumptions and Assignments of Executory Contracts and Unexpired Leases*

Except as otherwise provided in the Plan, this Confirmation Order or any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan or this Confirmation Order, or as may be agreed by and among the appropriate parties, on the Effective Date, pursuant to section 365 of the Bankruptcy Code, the Debtors shall be, and hereby are, deemed to have assumed, or assumed and assigned, as indicated, each of the executory contracts and unexpired leases listed on Exhibit V.A.1 to the Plan, as such exhibit may be amended pursuant to Section V.A.1 of the Plan and Section III.F.2 of this Confirmation Order. This Confirmation order shall be, and hereby is, deemed to constitute this Court's express approval and authorization, pursuant to section 365 of the Bankruptcy Code, of all such assumptions or assumptions and assignments, as of the Effective Date. Each contract or lease listed on Exhibit V.A.1 of the Plan, as it may be amended, shall be assumed or assumed and assigned only to the extent that such contract or lease is an executory contract or unexpired lease. The listing of a contract or lease on either Exhibit V.A.1 or Exhibit V.C to the Plan shall not constitute an admission by any Debtor or Reorganized Debtor that such contract or lease (or any related agreement described in Section V.A of the Plan) is an executory contract or unexpired lease, or that a Debtor or Reorganized Debtor has any liability thereunder. To the extent that Exhibit V.A.1 to the Plan contemplates the assignment of any executory contract or unexpired lease to any entity, including any Debtor, Reorganized Debtor or entity newly formed in connection with any Restructuring Transaction, and except as the applicable Debtor may have otherwise stipulated in writing, the applicable Debtor has provided adequate assurance of future performance thereunder, pursuant to section 365(f)(2)(B) of the Bankruptcy Code. In addition, to the extent that there has been a default by a Debtor under any executory contract or unexpired lease listed on Exhibit V.A.1 to the Plan, and except as the applicable Debtor may have otherwise stipulated in writing, the applicable Debtor has provided adequate assurance of future performance thereunder, pursuant to section 365(b)(1)(c) of the Bankruptcy Code, and the appropriate Debtor or Reorganized Debtor shall be, and hereby is, directed to cure such default, pursuant to section 365(b)(1)(A) of the Bankruptcy Code. In the event that the appropriate Debtor or Reorganized Debtor and the non-Debtor party to any such executory contract or unexpired lease cannot agree on the amount of any monetary default that must be cured, the Court shall determine the proper cure amount after notice and a hearing.

2. *Amendment of Plan Exhibit Regarding Executory Contracts and Unexpired Leases*

*34 Each of the Debtors shall be, and hereby is, authorized: (a) at any time prior to the Effective Date, to amend Exhibit V.A.1 to the Plan to delete any executory contract or unexpired lease listed thereon, thus providing for its rejection pursuant to Section V.C of the Plan; or (b) at any time prior to 90 days after the Effective Date, to amend Exhibit V.A.1 to add any executory contract or unexpired

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

lease, thus providing for its assumption or assumption and assignment pursuant to Section V.A.1 of the Plan. The Debtors or Reorganized Debtors, as appropriate, shall provide notice of any amendments to Exhibit V.A.1 to the Plan to the parties to the executory contract or unexpired leases affected thereby and, if such amendments are made before the Effective Date, to the parties on the then applicable master service list in the Reorganization Cases.

3. *Rejections of Executory Contracts and Unexpired*

On the Effective Date, each executory contract and unexpired lease entered into by a Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms (except for any executory contract or unexpired lease that was previously assumed or rejected pursuant to section 365 of the Bankruptcy Code and an appropriate authorizing order of this Court, or that is to be assumed or assumed and assigned pursuant to the Plan) shall be, and hereby is, deemed to have been rejected by the appropriate Debtor, pursuant to section 365 of the Bankruptcy Code. This Confirmation Order shall be, and hereby is, deemed to constitute this Court's express approval, pursuant to section 365 of the Bankruptcy Code, of each such rejection, as of the Effective Date.

G. DISCHARGE, TERMINATION, INJUNCTION AND SUBORDINATION RIGHTS

1. *Discharge of Claims and Termination of Interests*

a. Except as otherwise provided in the Plan or this Confirmation Order, the rights afforded under the Plan and the treatment of Claims and Interests under the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims and termination of all Interests, including any interest accrued on Claims from and after the Petition Date. Except as otherwise provided in the Plan or this Confirmation Order, the Debtors shall be, and hereby are, discharged from all Claims or other debts that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (i) a proof of Claim based on such debt is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the holder of a Claim based on such debt has accepted the Plan. In addition, except as otherwise provided in the Plan or this Confirmation order, the entry of this Confirmation Order shall be, and hereby is, deemed to terminate all Interests and other rights of equity security holders in the Debtors.

*35 b. Pursuant to section 1141(d)(3) of the Bankruptcy Code, the entry of this Confirmation Order shall be, and hereby is, deemed not to discharge Claims against Allied Stores Marketing or Jor-Mar; *provided, however,* that no holder of a Claim against Allied Stores Marketing or Jor-Mar may, on account of such Claim, seek or receive any payment or other distribution from, or seek recourse against, any Debtor, Reorganized Debtor, their respective successors or their respective property, except as expressly provided for holders of Administrative Claims, Other Priority Tax Claims or Unsecured Claims against Allied Stores Marketing or Jor-Mar.

2. *Injunction*

a. As of the Confirmation Date, except as otherwise provided in the Plan or this Confirmation Order, all non-Debtor entities and individuals shall be, and hereby are, permanently enjoined and precluded from asserting against the Debtors, the Reorganized Debtors, their respective successors or their respective property, any other or further Claims, debts, rights, causes of action, liabilities or equity interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the entry of this Confirmation Order. In accordance with the foregoing, except as otherwise provided in the Plan or this Confirmation order, this Confirmation Order shall be, and hereby is, deemed to constitute this Court's determination of discharge of all such Claims against, and other debts and liabilities of, the Debtors and termination of all such

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Interests and other rights of equity security holders in the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall be, and hereby is, deemed to void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a Claim discharged or Interest terminated pursuant to the Plan or this Confirmation Order.

b. Except as otherwise provided in the Plan or this Confirmation Order, as of the Confirmation Date, all non-Debtor entities and individuals that have held, currently hold or may hold a Claim or other debt or liability that is discharged or an Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan or this Confirmation Order shall be, and hereby are, permanently enjoined from taking any of the following actions on account of any such discharged Claims, debts or liabilities or terminated Interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding against the Debtors, the Reorganized Debtors, their respective successors or their respective property; (ii) enforcing, attaching, collecting or recovering, in any manner or in any place, any judgment, award, decree or order against the Debtors, the Reorganized Debtors, their respective successors or their respective property; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtors, the Reorganized Debtors, their respective successors or their respective property; (iv) asserting a right of setoff, subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors, the Reorganized Debtors, their respective successors or their respective property; and (v) commencing or continuing any action, in any manner or in any place, that does not comply or is inconsistent with the provisions of the Plan and this Confirmation order.

*36 c. All entities that have held, currently hold or may hold a Claim or other debt or liability against Allied Stores Marketing or Jor-Mar that would be discharged upon the entry of this Confirmation Order but for the provisions of section 1141(d)(3) of the Bankruptcy Code and Section X.A.2 of the Plan shall be, and hereby are, permanently enjoined from taking any of the following actions on account of any such Claim, debt or liability: (i) commencing or continuing, in any manner or in any place, any action or other proceeding on account of such Claim, debt or liability against any property to be distributed pursuant to the Plan, other than to enforce any right pursuant to the Plan to a distribution on account of such Claim, debt or liability; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against any property to be distributed pursuant to the Plan, other than as permitted pursuant to clause (i) above; and (iii) creating, perfecting or enforcing any lien or encumbrance against property to be distributed pursuant to the Plan.

d. All non-Debtor entities shall be, and hereby are, permanently enjoined from commencing or continuing any action or other proceeding, in any manner or in any place, whether directly, derivatively or otherwise, on account of or respecting any claim, debt, right, cause of action or liability released or to be released pursuant to the Comprehensive Settlement Agreement.

e. The following implements the settlement between the Debtors and the RTC in respect of the Objection of the RTC (the "RTC Objection"), dated December 19, 1991 (Bankruptcy Court Doc. No. 7088):

(i) In order to assure that confirmation of the Plan will not adversely affect any claims of the FDIC, the RTC., or both, other than claims arising solely as a result of their acquisition and ownership, or in their capacity as owner, of securities of the Allied or Federated Debtors, the Court finds that the scope of the release contained in Section IV.G.2 of the Plan does not affect in any way any existing or future claims of the FDIC, the RTC, or both, including, but not limited to, the Junk Bond Litigation (as such term is defined in the RTC Objection), excepting only claims arising particularly and directly from the transactions described within the definition of Subject Transactions and Matters contained in the Comprehensive Settlement Agreement. The entry

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.

Page 33

1992 WL 605483 (Bankr.S.D.Ohio)

**(Cite as: 1992 WL 605483 (Bankr.S.D.Ohio))**

of this Confirmation Order is without prejudice to the RTC or the FDIC asserting in any proceeding issues regarding the validity, extent or binding effect of the Deemed Release Provision in respect of such proceeding.

(ii) This Court is aware of 12 U.S.C. § 1821(j), which provides that no court may take any action to restrain or affect the exercise of powers or functions of the RTC or the FDIC in their capacities as conservator or receiver. This Court, by this Confirmation Order, is not ruling as to the applicability of 12 U.S.C. § 1821(j) because it does not believe it is necessary to address this issue at this time, and the RTC and FDIC shall not be prejudiced in any way from asserting the applicability of 12 U.S.C. § 1821(j) if it ever becomes necessary to decide whether the injunction provisions of Section IV.G.2 and X.B.3 of the Plan apply to the FDIC or the RTC.

**\*37** (iii) The RTC, in its capacity as past or present holder of Allied Preferred Shares, shall not be deemed to have received any New Debt or New Equity on account of Allied Preferred Shares under the Plan.

3. *Termination of Subordination Rights and Settlement of Related Claims and Controversies*

All contractual, legal or equitable subordination rights that a holder of a Claim or Interest may have with respect to any distribution to be made pursuant to the Plan shall be, and hereby are, discharged and terminated, and all actions related to the enforcement of such subordination rights shall be, and hereby are, permanently enjoined. Accordingly, distributions pursuant to the Plan to holders of Allowed Claims shall not be subject to payment to a beneficiary of such terminated subordination rights, or to levy, garnishment, attachment or other legal process by a beneficiary of such terminated subordination rights.

H. *SUBSTANTIAL CONSUMMATION*

The substantial consummation of the Plan, within the meaning of section 1127 of the Bankruptcy Code

, shall be, and hereby is, deemed to have occurred on the Effective Date.

I. RETENTION OF JURISDICTION

Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Court shall retain such jurisdiction over the Reorganization Cases as is legally permissible, including jurisdiction to:

1. Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims; *provided, however,* that such retention of jurisdiction shall not be deemed to amend, modify or vacate any prior orders of the Court with respect to deadlines, bar dates or any other procedures relating to or regulating the filing of proofs of Claims or objections to Claims;

2. Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3. Resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which any Debtor is a party or with respect to which any Debtor may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including (a) motions filed prior to the Effective Date that relate to the assumption, assumption and assignment or rejection of executory contracts and unexpired leases and (b) those matters related to the amendment of Exhibit V.A.1 to the Plan after the Effective Date pursuant to Section V.A.1(b) of the Plan to add any executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be assumed or assumed and assigned.

4. Ensure that distributions to holders of Allowed

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.  
1992 WL 605483 (Bankr.S.D.Ohio)

**(Cite as: 1992 WL 605483 (Bankr.S.D.Ohio))**

Page 34

Claims are made pursuant to the provisions of the Plan, including by ruling on any motion filed by the Claims Resolution Committee pursuant to Section XII.A.3.c of the Plan;

**\*38** 5. Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors, including any adversary proceedings under sections 544-550 of the Bankruptcy Code, notwithstanding whether such matters were pending before the Confirmation Date or are filed or commenced after the Confirmation Date;

6. Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Disclosure Statement or this Confirmation Order, except as otherwise provided herein or in the Plan;

7. Enter such orders as may be necessary or appropriate to resolve any disputes that may arise regarding the New Director Search Process, as contemplated by Section III.D.2.a(i)(III) of this Confirmation Order;

8. Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan, including the releases and injunctive provisions set forth in and contemplated by Sections IV.G.2, X.B and X.C of the Plan, the Comprehensive Settlement Agreement, this Confirmation Order or any entity's obligations incurred in connection with the Plan, the Comprehensive Settlement Agreement or this Confirmation order; *provided, however,* that such retention of jurisdiction shall not apply to any cases, controversies, suits or disputes that may arise in connection with New Federated's or any other entity's rights or obligations as the issuer or a holder, respectively, of New Debt or New Equity, or as a party to any New Debt Instrument, any New Shared Collateral Agreement or any other agreements governing, instruments evidencing or documents relating to any of the foregoing, including the interpretation or enforcement of any rights, remedies or obligations under any of the foregoing.

9. Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Disclosure Statement, this Confirmation order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or this Confirmation order; or remedy any defect or omission or reconcile any inconsistency in this Confirmation order, any other order of this Court, the Plan, the Disclosure Statement or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or this Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code.

10. Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with the consummation, implementation or enforcement of the Plan, except as otherwise provided in the Plan;

**\*39** 11. Enter and implement such orders as are necessary or appropriate if this Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

12. Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, this Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or this Confirmation order, except as otherwise provided in the Plan; and

13. Enter an order concluding the Reorganization Cases.

**J. POST-CONFIRMATION NOTICES AND REPORTS**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.

Page 35

1992 WL 605483 (Bankr.S.D.Ohio)

**(Cite as: 1992 WL 605483 (Bankr.S.D.Ohio))**

1. *Notice of Entry of Confirmation Order*

a. Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), the Debtors shall be, and hereby are, directed to serve a notice of the entry of this Confirmation Order, substantially in the form of Exhibit III.J.1.a attached hereto and incorporated herein by reference (the "Confirmation Notice"), on all holders of Claims or Interests and each of the Indenture Trustees no later than 14 days after the Confirmation Date; *provided,* however, that the Debtors shall be obligated to serve the Confirmation Notice only on the record holders of such Claims or Interests.

b. The Debtors shall be, and hereby are, directed to publish the Confirmation Notice once in *The Wall Street Journal* (National Edition) and once in *The Cincinnati Enquirer* no later than 14 days after the Confirmation Date.

c. The Debtors shall be, and hereby are, directed to serve copies of the Confirmation Order on each party identified on Master Service List No. 41, dated January 6, 1992, and on each party who filed an objection or response to, or statement or comment regarding, the Plan, no later than 14 days after the Confirmation Date.

2. *Reports Regarding Consummation of the Plan*

Pursuant to Local Bankruptcy Rule 3.17(a), the Debtors shall be, and hereby are, directed to file, no later than 90 days following the Confirmation Date and every 180 days thereafter until the entry of an order concluding the Reorganization Cases, a report containing information regarding the actions taken and the progress made by the Reorganized Debtors in consummating the Plan.

IT IS SO ORDERED.
   CC EXHIBIT IS NOT DISPLAYABLE
   CC EXHIBIT IS NOT DISPLAYABLE
   CC EXHIBIT IS NOT DISPLAYABLE
   CC EXHIBIT IS NOT DISPLAYABLE
   CC EXHIBIT 3IS NOT DISPLAYABLE
   CC EXHIBIT IS NOT DISPLAYABLE
   CC. Exhibit IS NOT DISPLAYABLE

CC EXHIBIT IS NOT DISPLAYABLE
CC EXHIBIT IS NOT DISPLAYABLE
CC EXHIBIT E7. IS NOT DISPLAYABLE

FN1. Unless otherwise specified, capitalized terms and phrases used herein have the meanings assigned to them in the Plan (as such term is defined below). The rules of interpretation set forth in Section I.B.1 of the Plan shall apply to these Findings of Fact, Conclusions of Law and order (this "Confirmation Order"). In addition, in accordance with Section I.A of the Plan, any term used in the Plan or this Confirmation Order that is not defined in the Plan or this Confirmation Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules. In accordance with Section III.A of this Confirmation Order, if there is any direct conflict between the terms of the Plan and the terms of this Confirmation order, the terms of this confirmation Order shall control.

FN2. Copies of the October 28 Plan (without certain of the Exhibits thereto) and the Modifications are attached hereto as Exhibit A and incorporated herein by reference.

FN3. This Confirmation Order constitutes the Court's findings of fact and conclusions of law under Fed.R.Civ.P. 52, as made applicable by Bankruptcy Rules 9014 and 7052. Any and all findings of fact shall constitute findings of fact even if they are stated as conclusions of law, and any and all conclusions of law shall constitute conclusions of law even if they are stated as findings of fact.

FN4. Unless otherwise indicated, each Class number that applies to a Class for more than one Debtor is unimpaired as to all Debtors to which such Class number

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.

1992 WL 605483 (Bankr.S.D.Ohio)

**(Cite as: 1992 WL 605483 (Bankr.S.D.Ohio))**

Page 36

applies.

FN5. Class FO-4 is impaired for all Federated Operating Subsidiaries and is unimpaired for all Federated other Subsidiaries, other than Block's, Inc., Federated Stores Realty, Inc., Goldsmith's, Inc., Lazarus Real Estate, Inc., Rich's Columbia Mall Real Estate, Inc., Rich's Shannon Mall Real Estate, Inc. and 22 East Advertising corporation.

FN6. Class AC-4 is unimpaired for Allied Credit Holdings and impaired for Allied Credit.

FN7. Class AR-7 is unimpaired for all Allied Real Estate Subsidiaries, other than ASGREC, BFC Real Estate Company, Douglaston Plaza, Inc. and Maas Properties, Inc.

FN8. Class AO-7 is impaired for all Allied Operating Subsidiaries and is unimpaired for all Allied other Subsidiaries, other than Tukwila Warehousing Services corporation.

1992 WL 605483 (Bankr.S.D.Ohio)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.