IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| KAISER ALUMINUM CORPORATION, | : | Bankruptcy Case No. 02-10429-JKF |
| a Delaware corporation, | : | |
| et al., | : | |
| | : | |
| Debtors. | : | |
| _____ | : | _____ |
| LAW DEBENTURE TRUST COMPANY, | : | |
| OF NEW YORK, | : | |
| | : | |
| Appellant, | : | |
| v. | : | Civil Action No. 05-135-JJF |
| | : | (Consolidated) |
| KAISER ALUMINUM CORPORATION, | : | |
| et al., | : | |
| | : | |
| Appellees. | : | |
| | : | |
| | : | |

Francis A. Monaco, Jr., Esquire of MONZACK AND MONACO, P.A.,
Wilmington, Delaware.
Of Counsel:  Tina Niehold Moss, Esquire and Steven M. Rabinowitz,
Esquire of PRYOR CASHMAN SHERMAN & FLYNN, LLP, New York, New
York.
Attorneys for Appellant.

Daniel J. DeFranceschi, Esquire; Kimberly D. Newmarch, Esquire
and Jason M. Madron, Esquire of RICHARDS, LAYTON & FINGER,
Wilmington, Delaware.
Of Counsel:  Gregory M. Gordon, Esquire; Richard A. Chesley,
Esquire and Daniel P. Winikka, Esquire of JONES DAY, Dallas,
Texas.
Attorneys for Appellee, Kaiser Aluminum Corporation.

Kathleen M. Miller, Esquire of SMITH KATZENSTEIN & FURLOW LLP,
Wilmington, Delaware.
Of Counsel:  Jeffrey B. Cohen, Esquire, Chief Counsel; Charles L.
Finke, Esquire, Associate Chief Counsel; James L. Eggeman,
Esquire and Joel W. Ruderman, Esquire of PENSION BENEFIT GUARANTY
CORPORATION, Washington, D.C.
Attorneys for Appellee, Pension Benefit Guaranty Corporation.

William P. Bowden, Esquire and Gregory A. Taylor, Esquire of
ASHBY & GEDDES, Wilmington, Delaware.

<u>Of Counsel</u>:  Lisa Beckerman, Esquire and Brian A. Kilmer, Esquire
of AKIN GUMP STRAUSS HAUER & FELD LLP, New York, New York.
Attorneys for the Official Committee of Unsecured Creditors.

---

## MEMORANDUM OPINION

March 8, 2006
Wilmington, Delaware

Farnan, District Judge.

Presently before the Court is an appeal by Appellant, Law Debenture Trust Company of New York ("LDTC") from two Orders entered by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on January 25, 2005: (1) the Order approving the settlement agreement between the Debtors and the Pension Benefit Guaranty Corporation (the "Settlement Order"), and (2) the Order Denying Law Debenture Trust Company of New York's Motion For Reconsideration of the Court's Stay of Law Debenture Trust Company of New York's Objection To Certain Proofs Of Claim Filed By The Pension Benefit Guaranty Corporation (the "Reconsideration Order"). For the reasons set forth below, the Court will affirm the Bankruptcy Court's Settlement Order and the Reconsideration Order.

## I.   PARTIES' CONTENTIONS

LDTC is a creditor of the Debtors and a non-party to the settlement agreement (the "PBGC Settlement") between the Debtors and Pension Benefit Guaranty Corporation ("PBGC"), another creditor of the Debtors. As a threshold matter, LDTC contends that the Bankruptcy Court erred in considering the PBGC Settlement without first resolving LDTC's objection to PBGC's claim. LDTC contends that it had an express statutory right under Section 502(a) of the Bankruptcy Code to object to the claim of another creditor, and that the Bankruptcy Court

1

erroneously applied its authority under Section 105 of the
Bankruptcy Code to thwart their right to object by approving the
settlement and mooting LDTC's objection.  LDTC further contends
that the Settlement Order cannot properly resolve its claim
objection because LDTC was not a party to the PBGC Settlement
Agreement.

    In addition, LDTC contends that the Bankruptcy Court abused
its discretion in approving the settlement agreement.  LDTC
contends that the settlement process was unfair and prejudicial
to LDTC, and the settlement itself was patently unreasonable
because PBGC received a windfall.

    In response, the Debtors contend that Section 502(a) does
not give LDTC the right to object to the claims of other
creditors, unless the trustee charged with administering the
estate has failed to address the claims, and the creditor has
made a demand upon the trustee to bring an objection.  In the
alternative, the Debtors contend that even if LDTC has the right
to bring such a claim objection under Section 502(a), that right
is satisfied through the ability to object to the settlement.

    As for LDTC's argument that it is not bound by the PBGC
Settlement, the Debtors contend that first, LDTC failed to raise
this argument in the Bankruptcy Court, and therefore it is
waived.  The Debtors also contend that LDTC's argument
contradicts the well-established principle in bankruptcy that a

debtor or trustee represents the interests of, and binds all general unsecured creditors when entering into settlement agreements.

As for the settlement itself, the Debtors contend that the Bankruptcy Court did not abuse its discretion in approving the PBGC Settlement.  The Debtors contend that the Bankruptcy Court properly weighed the factors set forth by the Third Circuit in In re Martin, 91 F.3d 389 (3d Cir. 1996) to conclude that the settlement was reasonable and in the best interests of the estates.

PBGC has filed a separate brief in response to LDTC's Opening Brief, which reiterates several of the arguments made by the Debtors.  In addition, PBGC contends that LDTC lacked standing to object to PBGC's claims, because the Debtors are operating and managing their business as debtors-in-possession, and therefore, they are performing all the duties of a trustee under Section 704 of the Bankruptcy Code, including the duty to examine proofs of claim and object to those proofs of claim.

The Official Committee of Unsecured Creditors has also filed a brief which reiterates the Debtors' arguments and challenges LDTC's allegations that the settlement negotiations were not conducted in good faith and at arms-length.  The Committee also contends that, contrary to LDTC's assertions, LDTC was involved in and apprised of the settlement negotiations.

3

## II.   STANDARD OF REVIEW

The Court has jurisdiction to hear an appeal from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a).  In undertaking a review of the issues on appeal, the Court applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to its legal conclusions.  See Am. Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999).  With mixed questions of law and fact, the Court must accept the Bankruptcy Court's finding of "historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 642 (3d Cir. 1991) (citing Universal Mineral, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir. 1981)).  The appellate responsibilities of the Court are further understood by the jurisdiction exercised by the Third Circuit, which focuses and reviews the Bankruptcy Court decision on a de novo basis in the first instance.  In re Telegroup, 281 F.3d 133, 136 (3d Cir. 2002).

4

III. **DISCUSSION**

    A.   <u>Whether The Bankruptcy Court Erred In Holding The</u>
           <u>Settlement Hearing Before Resolving LDTC's Proof Of</u>
           <u>Claim Objection And Subsequently Mooting LDTC's Claim</u>
           <u>Objection</u>

LDTC contends that it has the right to bring a claim objection under Section 502(a)[1], and that there is a conflict between Section 502(a) and Bankruptcy Rule 9019 which pertains to the approval of settlement.  LDTC contends that this conflict arises because the standard for determining whether to approve a settlement under Rule 9019 is less exacting than that which is required for adjudication of the proof of claim under Section 502.  In the face of this alleged conflict, LDTC contends that the Bankruptcy Rule at issue must give way to the applicable Bankruptcy Code section.

While it is true that the Bankruptcy Code trumps related Bankruptcy Rules implementing the Bankruptcy Code, this proposition is typically used when there is a direct conflict or contradiction between the applicable Rule and the Code section it is implementing.  In this case, the Court concludes that there is no direct conflict between Section 502(a) and Rule 9019 which

---

     [1]    In pertinent part, Section 502(a) of the Bankruptcy Code provides:

    A claim or interest, proof of which is filed under
    section 501 of this title, is deemed allowed, unless a
    party in interest, including a creditor of a general
    partner in a partnership that is a debtor in a case
    under chapter 7 of this title, objects.

5

would require the Bankruptcy Court to resolve claim objections
before approving a settlement.  Indeed, LDTC has not identified,
and the Court has been unable to locate, any case law requiring
such a procedure.  Moreover, it is the Court's view that such a
procedure would undermine the important policy of promoting
settlements in bankruptcy proceedings by requiring the parties to
litigate the very issues that the settlement seeks to resolve.

LDTC directs the Court to the Third Circuit's decision in In
re Combustion Engineering, 391 F.3d 190 (3d Cir. 2004), for the
proposition that the Bankruptcy Court should not have used its
powers under Section 105 to thwart its rights to bring a claim
objection under Section 502(a).  However, in the absence of
specific guidance from the Third Circuit, the Court declines to
read Combustion Engineering as broadly as LDTC advocates.
Combustion Engineering dealt with the specific interaction
between Section 105 and Section 524(g), and the Third Circuit
expressly declined to discuss the manner in which Section 105
operates in other contexts stating that "[w]hatever may be the
limits of 105(a) in other contexts, we hold only that 105(a)
cannot be used to achieve a result not contemplated by the more
specific provision of 524(g), which is the means Congress
prescribed for channeling the asbestos liability of a non-
debtor."  Id. at 237, n. 50 (emphasis added).

LDTC also contends that the PBGC Settlement cannot resolve its claims, because LDTC is not a party to the PBGC Settlement. The Debtors contend, and LDTC does not dispute that it did not make this argument before the Bankruptcy Court, and therefore, it is not properly before this Court on appeal.  See e.g., Brown v. Phillips Morris, 250 F.3d 789, 799 (3d Cir. 2001).  However, even if the Court considers this argument, the Court concludes that it does not provide a basis for relief.  First, the Court is not persuaded that the cases cited by LDTC support its argument. Second, the Court concludes that LDTC's argument contradicts well-established bankruptcy principles recognizing that the debtor is charged with fiduciary responsibilities to all creditors to resolve claims in the best interest of the estate. To the extent LDTC contends that the Debtor breached this fiduciary duty, the Court rejects LDTC's argument for the reasons discussed in the context of the Bankruptcy Court's approval of the settlement.

In sum, the Court concludes that the Bankruptcy Court did not err in staying LDTC's claim objection and subsequently mooting the objection after proceeding to evaluate the settlement which was meant, at least in part, to resolve that objection. Accordingly, the Court will affirm the decision of the Bankruptcy Court denying LDTC's motion for reconsideration.

B.   Whether The Bankruptcy Court Abused Its Discretion In
     Approving The PBGC Settlement

LDTC next contends that the Bankruptcy Court abused its
discretion in approving the PBGC Settlement.  Specifically, LDTC
contends that the Debtors offered insufficient facts to
demonstrate that the PBGC Settlement negotiations were conducted
in good faith and at arm's length.  LDTC contends that the
Debtors ceded their responsibility for negotiating the settlement
to the Senior Noteholders, who then excluded the Senior
Subordinated Noteholders form the process.  LDTC also contends
that the Senior Noteholders colluded with PBGC to garner PBGC's
support in their dispute with the Senior Subordinated Noteholders
as to whether those Noteholders' claims were in fact subordinate
to the Senior Noteholders' claims at the Alumina Estates.  LDTC
further contends that the settlement was patently unreasonable
because case law establishes that PBGC cannot use its own
regulatory rates to calculate the amount of its Unfunded Benefit
Liability Claims, and that a higher "prudent investor rate"
should have been applied.  Under its own regulatory rates, PBGC
valued its claim at $616 million, but under the prudent investor
rate, PBGC's claim would have been valued at $168 million.  Thus,
LDTC contends that the $268 million dollar settlement represents
a windfall of $100 million dollars beyond the "true" value of the
PBGC claim.

8

Pursuant to Bankruptcy Rule 9019, the Bankruptcy Court must determine whether a proposed settlement is in the best interest of the debtor's estate before such a settlement is approved. <u>See Martin</u>, 91 F.3d at 394; <u>In re Marvel Entm't Group, Inc.</u>, 222 B.R. 243, 249 (D. Del. 1998). In exercising its discretion to approve a settlement, the Bankruptcy Court must also "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal" in light of four factors: (1) the probability of success in the litigation, (2) the likely difficulties in collection, (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it, and (4) the paramount interests of the creditors. <u>In re Martin</u>, 91 F.3d at 393.

Reviewing the record as it pertains to these issues, the Court concludes that the Bankruptcy Court did not abuse its discretion in approving the PBGC Settlement. Although the Sixth and the Tenth Circuit have held that the bankruptcy court may value the unfunded benefit liability using the "prudent investor rate," the most recent court to consider this issue, the Bankruptcy Court for the Eastern District of Virginia, has concluded otherwise. <u>Compare In re CSC Industrial, Inc.</u>, 232 F.3d 505 (6th Cir. 2000) (noting the Supreme Court's decision in <u>Raleigh v. Illinois Dep't of Revenue</u>, 530 U.S. 15 (2000), but

9

concluding that "[w]hile validity of a claim is governed by nonbankruptcy law, bankruptcy courts have the statutory authority to determine the allowability and amount of the claim") and PBGC v. CF&I Fabricators of Utah, Inc., 150 F.3d 1293, 1297-1298 (10th Cir. 1998) (pre-dating the Supreme Court's decision in Raleigh) with In re US Airways Group, Inc., 303 B.R. 784 (Bankr. E.D. Va. 2003) (expressing disagreement with the Sixth and Tenth Circuits and concluding that "it is simply not a correct reading of Raleigh to say that nonbankruptcy law determines only the abstract validity of the claim" and that "Raleigh is very clear that a creditor's claim 'in the first instance' is a function of the nonbankruptcy law giving rise to the claim"). In this case, the Bankruptcy Court recognized the conflict in the applicable law, opined that the methodology in U.S. Airways was supported, and noted the Third Circuit has yet to rule on this issue. Tr. 1/24/05 at 93-94; 1/18/05 at 252. The Bankruptcy Court also identified other areas of uncertainty and risk, including among other things, PBGC's likely amendment of its administrative claim from 13 million to 63 million, and the risk to the solvency of the estate that such an amendment would pose. The Court agrees with the findings of the Bankruptcy Court that, in the face of these complex and uncertain issues, it is difficult to envision who would succeed, but not difficult to envision complex, costly and time-consuming litigation. The Court also agrees with the

10

Bankruptcy Court that the proposed settlement serves the best interest of the estate and the creditors by arranging for a global settlement which will facilitate a plan of reorganization that will ultimately benefit all creditors and reduce the fees, costs and expenses that the estate would have had to bear in order to litigate the extensive, complex and uncertain issues raised by PBGC's claim.

The Court is also not persuaded that LDTC has demonstrated that it was prejudiced by the settlement negotiations as a result of collusion and lack of good faith in the settlement negotiations. LDTC refers to language in early draft sheets in which PBGC and Senior Noteholders agreed to work together with the Debtors to propose plans of reorganization for certain estates that would provide for the enforcement of the subordination of the Senior Subordinated Notes and the treatment of PBGC's claims; however, these terms never became part of the settlement agreement approved by the Bankruptcy Court. Moreover, the Debtor's reorganization plans do not seek subordination of the notes, but instead reserve that issue for the Bankruptcy Court to decide. Thus, the Court is not persuaded that LDTC has demonstrated that the PBGC Settlement should have been rejected by the Bankruptcy Court on these grounds.

In sum, the Court concludes that the Bankruptcy Court's findings are supported by the record, and therefore, the Court

11

cannot conclude that the Bankruptcy Court abused its discretion in approving the PBGC Settlement.  Accordingly, the Court will affirm the Bankruptcy Court's decision approving the PBGC Settlement.

**IV.  CONCLUSION**

For the reasons discussed, the Bankruptcy Court's January 25, 2005 Settlement Order and Reconsideration Order will be affirmed.

An appropriate Order will be entered.